28 N.J. Super. 178 (1953)
100 A.2d 291
RUBEN VENETSKY AND MIRIAM VENETSKY, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
WEST ESSEX BUILDING SUPPLY CO., INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1953.
Decided November 5, 1953.
*181 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Benjamin Gittleman argued the cause for appellants.
Mr. Francis F. Welsh argued the cause for respondent.
The opinion of the court was delivered by EWART, J.A.D.
A chronology of the events leading up to the controversy presented by this appeal is as follows:
January 22, 1953  Eliza Gottsleben died a widow and intestate, resident at and seized of title to premises known as 81-83 West Kinney Street, Newark, N.J. She left her surviving as her only heirs-at-law and next-of-kin three children, viz., Clarence Fred Gottsleben, a son; Joseph William Gottsleben, a son; and Elsie May Day, a daughter, all of whom were of full age. No administration has ever been taken out on her estate.
January 26, 1953  By deed of this date, "Clarence F. Gottsleben and Mildred Grace Gottsleben, his wife" conveyed all of their right, title and interest in and to the premises in question to Joseph W. Gottsleben. The deed was recorded January 30, 1953 in Book 3106 of Deeds for Essex County, page 158. The deed recited that he was one of the heirs-at-law of Eliza Gottsleben who died January 22, 1953.
*182 February 9, 1953  By deed of this date, recorded March 5, 1953 in Book 3113 of Deeds for Essex County at page 480, Elsie May Day and Osborne Harold Day, her husband, conveyed all of their right, title and interest in and to the premises in question to Joseph W. Gottsleben.
February 16, 1953  An agreement in writing was entered into on this date between Joseph William Gottsleben, single man, as seller, and plaintiff Ruben Venetsky as buyer, by the terms whereof the seller agreed to sell and convey to the buyer by deed of bargain and sale, but free from all encumbrances, on or before March 15, 1953, title to the premises in question for a price of $5,000. The contract of sale contained the following recitals:
"Being the same premises conveyed to Eliza Gottsleben by deed dated October 26th, 1948 and recorded in Book S 112; Pages 147-148.
The said Eliza Gottsleben died a widow and intestate on January 22nd, 1953 leaving her surviving three children, Elsie May Day, Clarence F. Gottsleben and Joseph William Gottsleben. The said Elsie May Day and Clarence F. Gottsleben have conveyed their interest in the above described property to Joseph William Gottsleben."
And the contract of sale contained an express representation that all debts of the estate of Eliza Gottsleben had been paid; that the seller would execute an affidavit of title in the customary form; and a covenant that in the event it should afterwards appear that there were debts against the estate of Eliza Gottsleben, the seller would be personally liable for the payment thereof.
March 9, 1953  By bargain and sale deed bearing this date, Joseph William Gottsleben, unmarried, conveyed to the plaintiff Ruben Venetsky, title to the premises in question, which deed was duly recorded on the same day in Book 3114 of Deeds for Essex County, page 300. The deed contained the following recital:
"Being the same premises conveyed to Eliza Gottsleben by deed dated October 26th, 1948 and recorded in Book S 112; pages 147-148.
*183 The said Eliza Gottsleben died a widow and intestate on January 22nd, 1953, leaving her surviving three children, Elsie May Day, Clarence F. Gottsleben and Joseph William Gottsleben. The said Elsie May Day and Clarence F. Gottsleben have conveyed their interest in the above described property to Joseph William Gottsleben."
On the same date as the deed last mentioned, and simultaneous with the execution thereof, Joseph William Gottsleben executed a long conventional form of affidavit of title in which is traced step by step the devolution of title to the premises in question, commencing with the deed from Munn to Ashfield in 1919 and continuing the same down into Eliza Gottsleben; stating the date of death of Eliza Gottsleben and the fact that she died a widow and intestate, leaving her surviving as her only heirs-at-law her three children as aforesaid, including "Clarence F. Gottsleben"; stating the conveyance by Clarence F. Gottsleben et ux., to deponent Joseph William Gottsleben, and the conveyance by Elsie May Day et vir., to Joseph William Gottsleben, giving the dates of the deeds and the books and pages where recorded as above set forth; stating that title to the said premises was free and clear of all encumbrances, including judgments; that all debts of Eliza Gottsleben had been paid in full and that there were no federal estate taxes or transfer inheritance taxes due upon her estate; stating and agreeing that deponent would obtain a New Jersey inheritance tax waiver as promptly as possible and attend to recording the same in the Essex County Clerk's office at his own expense; agreeing that in the event any estate or inheritance taxes should thereafter be levied or become due, or should debts upon the estate of Eliza Gottsleben be thereafter made to appear, that is, debts that would be a lien on the premises in question, that the deponent would save Ruben Venetsky harmless from the same and be personally liable for the payment thereof; stating that the matters and facts alleged in the affidavit were within the personal knowledge of deponent and that the affidavit was made to induce Ruben Venetsky to accept a deed for title to said premises and to pay the agreed consideration therefor.
*184 It further appeared that settlement under the contract was made March 9, 1953 and that the plaintiff Ruben Venetsky at that time paid the balance of the consideration price to Joseph William Gottsleben, the total payments, after necessary adjustments, amounting in the aggregate to $5,079.11.
Subsequent to the closing of title on March 9, 1953, the purchaser Venetsky ascertained that on October 1, 1952 final judgment was entered in the Superior Court in favor of defendant West Essex Building Supply Co., Inc., against "Fred Gottsleben and Mildred G. Gottsleben, his wife" in the amount of $1,394.91 plus costs. March 9, 1953 execution on said judgment was issued to the sheriff of Essex County pursuant to which the sheriff levied upon all of the right, title and interest of Fred Gottsleben and Mildred G. Gottsleben, his wife, in and to the premises in question, the levy having been made March 13, 1953.
May 26, 1953  The right, title and interest of Fred and Mildred G. Gottsleben in and to the premises in question were sold by the sheriff and purchased by the defendant.
On May 23, 1953 this suit was filed in the clerk's office of the Superior Court and in the complaint plaintiffs demand judgment that they hold the lands and premises in question free and clear of the lien of the aforesaid judgment against Fred and Mildred G. Gottsleben; that the aforesaid levy be set aside; and that the defendant be enjoined from proceeding with the sale of the premises. In short, plaintiff is demanding a declaratory judgment. Defendant's answer asserts that its judgment did constitute a first lien upon the right, title and interest of the defendant Fred Gottsleben; that plaintiff's acquisition of title was subject to the lien of defendant's judgment and, in effect, joins in the demand for a declaratory judgment.
At the trial of this matter before the court without a jury, a birth certificate was produced and revealed that "Clarence Fred Gottsleben," son of Henry and Eliza Gottsleben, was born at Newark on August 17, 1892. The proofs at the hearing also disclosed that Benjamin Gittleman, Esquire, an attorney at law, who had had upwards of 25 years' experience in *185 searching titles to real estate, had searched the title to the premises in question prior to making settlement on March 9, 1953; had secured county and tax searches and had likewise secured searches in the United States District and New Jersey Superior Courts against all of the names appearing in the chain of title for 20 years past, including the name "Clarence F. Gottsleben," but that no judgments or other liens were disclosed thereby. The certificate annexed to the search of the records in the United States District Court and New Jersey Superior Court bears date March 5, 1953.
On behalf of the defendant it was disclosed at the hearing that Clarence Fred Gottsleben was listed in the Madison telephone directory as "C.F. Gottsleben," residing on Noe Avenue in Chatham Township; that on August 14, 1952 he opened an account in the First National Bank of Madison in the name of "Mr. Fred Gottsleben, Noe Avenue, Chatham Township," and that he was known at the bank only by the name Fred Gottsleben. And it also appeared that since October 1949 he had been known to Theodore A. Hansen, a general contractor, as "Fred Gottsleben," who had introduced him to the defendant West Essex Building Supply Co., Inc., by that name. And it further appears that Fred Gottsleben purchased building material at the defendant's yard for which he gave a promissory note signed by himself and wife which formed the basis of the judgment secured by the defendant against him.
The record before us does not disclose that plaintiff Ruben Venetsky, or his attorney Benjamin Gittleman, who made and secured the title searches, had any prior acquaintance with the Gottsleben family.
On this state of proofs the trial court found that plaintiffs took a calculated risk in accepting a conveyance of title so soon after the death of Eliza Gottsleben; that plaintiff had failed to sustain the burden of proof, and that judgment should be entered in favor of the defendant and the complaint dismissed.
By statute judgments are made a lien upon real estate from the date of the entry of such judgment on the records *186 of the court, N.J.S. 2A:16-1, and where the judgment debtor acquires title subsequent to the entry of the judgment, the lien thereof attaches immediately upon acquisition of title by him. Camden County Welfare Board v. Federal Deposit Ins. Corp., 1 N.J. Super. 532 (Ch. Div. 1948).
And the statute further directs that the clerk of the Superior Court shall keep and maintain a book known as the civil judgment and order docket in which shall be entered an abstract of each judgment or order for the payment of money including, inter alia, the names at length of all parties to the judgment, the amount of damages and costs recovered, and the date of actual entry of the judgment. N.J.S. 2A:16-11. And the clerk is further directed by statute to keep and maintain suitable indices in alphabetical order of the judgment and order docket, and the record of all judgments, assignments thereof, etc. N.J.S. 2A:16-16. The purpose, of course, of these statutes is to give constructive notice to subsequent purchasers, encumbrancers and others who may deal with title to the real estate upon which the judgment constitutes a lien. This court will take judicial notice of the fact that the Russell Index System is used in the office of the Clerk of the Superior Court and that the record of judgments under that system are listed alphabetically, both with respect to the Christian or given names and with respect to the surnames of the parties to the suit resulting in a judgment.
At common law it was a well-established rule that the law knows but one Christian name and one surname and, with some qualification, that rule still prevails. Dilts v. Kinney, 15 N.J.L. 130 (Sup. Ct. 1835); Schaffer v. Levenson Co., 82 N.J.L. 61 (Sup. Ct. 1911); Yucker v. Morris, 85 N.J. Eq. 476 (Ch. 1915), reversed on other grounds 86 N.J. Eq. 181 (E. & A. 1916); 30 Am. Jur., Judgments, § 89; Anno., 122 A.L.R. 909.
It has long been settled that actions properly brought must be commenced and prosecuted in the proper Christian and surnames of the parties to the suit, and that the names of the parties must be stated with certainty and not merely *187 by the use of initials, excepting that under the statutes (Practice Act. Rev. 1874, page 598, § 28; Practice Act of 1903, § 27) in cases of parties described by initial letters in bills of exchange or promissory notes or other written instruments, suits may be brought against them in the names appearing in such instruments. Elberson v. Richards, 42 N.J.L. 69 (Sup. Ct. 1880); Dittmar Powder Mfg. Co. v. Leon, 42 N.J.L. 540 (Sup. Ct. 1880); Schaffer v. Levenson Co., supra; Yucker v. Morris, supra; In re Conde, 137 N.J.L. 589 (Sup. Ct. 1948); 1 Chitty on Pleading 256; R.R. 4:10-1. And to constitute notice to subsequent bona fide purchasers or encumbrancers, a judgment must be properly docketed by the correct Christian name and surname of the judgment debtor. Lembeck, etc., Brewing Co. v. Barbi, 90 N.J. Eq. 373 (Ch. 1919), affirmed 91 N.J. Eq. 533 (E. & A. 1920); Zimmer v. Dunlap, 99 N.J. Eq. 610 (Ch. 1926); Englese v. Hyde, 111 N.J.L. 1 (E. & A. 1933); Houser v. Childs, 129 Pa. Super. 565, 196 A. 547 (Super. Ct. 1938); Coral Gables, Inc. v. Kerl, 334 Pa. 441, 6 A.2d 275 (Sup. Ct. 1939); 13 N.J. Practice Series (Lieberman), § 1086, page 406; 30 Am. Jur., Judgments, §§ 83 and 91; 49 C.J.S., Judgments, § 465.
Where it is made to appear that one has acquired title to property and has paid a valuable consideration therefor, the purchaser is presumed to be a bona fide purchaser for value without notice until the contrary appears, and the burden of showing to the contrary rests upon the party alleging that title was acquired by the purchaser with notice of an outstanding equity or claim. Roll v. Rea, 50 N.J.L. 264 (Sup. Ct. 1888), affirmed 57 N.J.L. 647 (E. & A. 1895); McVoy v. Baumann, 93 N.J. Eq. 360 (Ch. 1922), affirmed 93 N.J. Eq. 638 (E. & A. 1922); Commonwealth Finance Corp. v. Schutt, 97 N.J.L. 225, 229 (E. & A. 1921); Eckman v. Beihl, 116 N.J.L. 308, 315 (Sup. Ct. 1936).
It has been suggested that Joseph W. Gottsleben, plaintiff's grantor, knew of the judgment against his brother, Clarence F. Gottsleben, and that such knowledge on the part *188 of Joseph could be charged against his grantee. The law is to the contrary. It is well settled in this State that a person may have the standing of a bona fide purchaser although he acquires title from one who is not a bona fide purchaser. Behn v. National Bank of N.J., 65 N.J.L. 591 (E. & A. 1900); Commonwealth Finance Corp. v. Schutt, supra, at page 229 (E. & A. 1921).
The trial court found that the plaintiff took a "calculated risk" when he acquired title so soon after the death of Eliza Gottsleben (a period of about a month and a half); that the failure of the plaintiff to appear as a witness and testify was not without significance, and that the plaintiff had failed to sustain the burden of proof and that therefore judgment should be entered in favor of defendant. We think the trial court fell into error in these rulings.
The only apparent calculated risks taken by plaintiff in acquiring title a month and a half after the death of Eliza Gottsleben, the former owner, were with respect to: (1) the possibility of a lien for federal estate tax; (2) possible lien for transfer inheritance tax; (3) the statutory lien for a year after her death of debts, if any, owing by her at death, and (4) the possibility of there being other heirs not disclosed by the affidavit of title furnished to the plaintiff as purchaser. There are no such items in controversy in this suit. It cannot be said that plaintiff, in acquiring title within a month and a half of the death of the former owner, took a "calculated risk" with respect to judgments against one or more of the heirs which a title search would have disclosed had the judgment been properly indexed and recorded.
Nor do we think any significance is to be attached to the failure of the plaintiff to testify in his own behalf. It was definitely established by the testimony of others at the trial that plaintiff had secured customary and adequate title searches before taking title and that he paid out a valuable consideration for the title. That created a presumption that he was a bona fide purchaser for value without notice and in the absence of proof to the contrary, there was no necessity for the plaintiff to testify.
*189 Nor do we think the trial court was correct in concluding that the plaintiff had failed to carry the burden of proof. The proofs before the court definitely established that plaintiff paid out upwards of $5,000 for title to the premises in question, after having secured customary and adequate title searches and an affidavit of title from one in a position to know at first hand the names of the heirs of Eliza Gottsleben. Under such circumstances, the law presumes the plaintiff was a bona fide purchaser for value and places upon the one attacking that presumption the burden of adducing proof to the contrary. There was no such contrary proof before the trial court.
There can be no dispute in this case but that the proper name of the judgment debtor was and is Clarence F. Gottsleben. It does appear that he maintained a bank account in the name of Fred Gottsleben; that he was introduced to defendant as Fred Gottsleben; and that he was apparently known in the neighborhood in which he lived as Fred Gottsleben, although it also appeared that his name was listed in the telephone directory as "C.F. Gottsleben." However, he conveyed his undivided interest in the premises in question to his brother, Joseph W. Gottsleben, by his correct name of "Clarence F. Gottsleben"; the contract of sale entered into between Joseph W. Gottsleben and the plaintiff on February 16, 1953 correctly recited the name of "Clarence F. Gottsleben" as one of the heirs of Eliza Gottsleben; and the affidavit of title furnished the plaintiff by Joseph Gottsleben at the time of settlement under the contract, viz., on March 9, 1953, sets forth the correct name as "Clarence F. Gottsleben."
There is nothing in the record before us to show that plaintiff had any actual notice of the judgment against "Fred Gottsleben" until a date subsequent to his having acquired title to the premises and having paid the consideration therefor. Nor is there anything in the record to show that he had knowledge of facts which should have put him on inquiry. Accordingly, it may be said on the basis of the record before us that plaintiff had neither actual nor constructive *190 notice of the judgment against Fred Gottsleben. A judgment indexed under a first name different and distinct from the real first name of the judgment debtor does not constitute a lien upon the debtor's real estate as against a subsequent purchaser or encumbrancer for value without notice. Lembeck, etc., Brewing Co. v. Barbi, supra; Zimmer v. Dunlap, supra; Englese v. Hyde, supra; Houser v. Childs, supra; Coral Gables, Inc. v. Kerl, supra; 30 Am. Jur., Judgments, §§ 83 and 91; 49 C.J.S., Judgments, § 465.
Judgments being indexed alphabetically in the office of the Clerk of the Superior Court, it is not to be supposed that a proper and adequate judgment search against Clarence F. Gottsleben would reveal a judgment against Fred Gottsleben.
Furthermore, to hold that a bona fide purchaser of real estate would take title thereto subject to a judgment theretofore entered against a former owner where the judgment was not indexed under the correct Christian name of such judgment debtor, would tend to destroy the value of the statutory system of recording land titles and liens and encumbrances thereon and to render titles to real estate most hazardous and uncertain. In the language of the court in Lembeck, etc., Brewing Co. v. Barbi, supra:
"An otherwise perfect chain of title search, based upon a search in the real names of the parties as they appear of record, would not be worth the paper it was written on, because you could never tell what outstanding deeds or incumbrances might exist of record affecting the premises in fictitious names.
To sustain the Brewing Company's mortgage as the prior lien would be to sustain the illogical and intolerable situation thus outlined, and would make ducks and drakes of the recording system in New Jersey. A search would be useless, and the result would be confusion and confusion worse confounded."
It is not questioned but that the defendant acted in good faith in taking its judgment against "Fred Gottsleben," the only name by which it knew its debtor. Nor is there anything in the record to overcome the presumption that the plaintiff acted in perfect good faith in acquiring title to the real estate in question and paying the consideration therefor in reliance upon the fact, disclosed in both the affidavit of *191 title furnished him and in the recorded deed from Clarence F. Gottsleben et ux., to Joseph W. Gottsleben, that the former owner against whom he needed to secure title searches was "Clarence F. Gottsleben" and not "Fred Gottsleben." As between the plaintiff who purchased and paid out upwards of $5,000 for the title, and thereby changed his position, and the defendant who had secured a judgment against "Fred Gottsleben" the preceding year, and who parted with nothing after the judgment debtor inherited upon the death of his mother an interest in the property in question, the equities are with the plaintiff.
At the argument of this appeal, counsel for defendant suggested that since the trial below he has come into possession of newly discovered evidence bearing on the question of alleged knowledge by plaintiff, prior to taking title to the premises in question, that the judgment debtor was commonly known as "Fred Gottsleben" and that, hence, the exercise of reasonable precaution by the purchaser would have required him to secure judgment searches against "Fred Gottsleben" before taking title. That is a question to which we cannot give consideration on the record before us, but to which the trial court may give consideration upon a proper application to that tribunal.
The judgment appealed from must be reversed for the reasons stated, but rather than to direct the entry of judgment in favor of plaintiff as we might do, R.R. 1:5-4, made applicable to the Appellate Division by R.R. 2:5, because of the matters stated in the paragraph next preceding, the cause is remanded for further proceedings in accordance with the conclusions here expressed.
Judgment reversed.