745 A.2d 419

**Gary W. WAICKER et al.**

v.

**Fabio K. BANEGURA et al.**

**No. 48, Sept. Term, 1999.**

Court of Appeals of Maryland.

Feb. 9, 2000.

452

Donald P. Mazor, Baltimore, for appellants.

Edward J. Gilliss (Edward U. Lee, III, Royston, Mueller, McLean & Reid, LLP, on brief), Towson, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Gary W. Waicker and Diane L. Waicker, appellants, appeal from a judgment of the Circuit Court for Baltimore County, in favor of Mystic Investments, Inc. (Mystic or Mystic Investments), appellee, finding that Mystic's lien had priority over a misindexed lien of appellants.[1] Appellants present one issue: "Whether the judgment held by appellants Gary and Diane Waicker has priority over the judgments to which appellee Mystic Investments, Inc., have been subrogated." We respond to appellants' issue in the negative, and accordingly affirm the circuit court.

## I. Facts

On or about April 28, 1993, appellants, Gary W. Waicker and Diane L. Waicker, sought to have a deficiency judgment they held from the Circuit Court for Baltimore City against appellees Fabio K. Banegura and Olive K. Banegura, as husband and wife, recorded in the Circuit Court for Baltimore County. When the Waickers' judgment was indexed and recorded by the Clerk of the Baltimore County Circuit Court, it was misindexed under the name Banegu*n*a rather than Banegura. The Baltimore County Notice of Recordation, dated April 28, 1993, was mailed to appellants and showed that the judgment had been indexed improperly.[2]

This cause of action arose when appellants sought to enforce their judgment against the property, then owned by Fabio K.

---

1. On our own motion, we issued a writ of certiorari prior to consideration by the Court of Special Appeals.

2. The docket entries in respect to the underlying deficiency judgment rendered in the Circuit Court for Baltimore City include this entry:
 02/19/93 ORDR DECREE–JUDGMENT ENTERED IN FAVOR OF GARY W. WAICKER FOR THE SUM OF $99,154.11, AGAINST FABIO BANEGUNA, M.D. & OLIVE BANEGUNA, HIS WIFE.... [Emphasis added.]

Banegura, known as 6612 Loch Raven Boulevard, Baltimore County, Maryland, the property encumbered by Mystic's Deed of Trust lien.[3] At the time the Waicker judgment was recorded (and misindexed) in Baltimore County, there was a preexisting deed of trust lien on the property in the principal amount of $52,699.01. This mortgage had been previously granted by both Mr. and Mrs. Banegura. Additionally, there were three judgment liens recorded in Baltimore County against Fabio Banegura, individually, that predated recordation of appellants' judgment in Baltimore County. As of September, 1997, these judgments and their payoff balances were: (1) the Taylor judgment, dated May 14, 1985, in the sum of $3,600.00; (2) the Household Bank judgment, dated April 21, 1986, in the sum of $4,000.00; and (3) the O'Connor, Piper and Flynn judgment, dated November 21, 1986, in the sum of $700.00. Because these three judgments were against Fabio Banegura individually, they were not liens against the property owned by Fabio and Olive Banegura as tenants by the entirety.

On or about September 25, 1997, the Baneguras refinanced their property through Mystic Investments. As part of this planned refinancing, the Baneguras transferred the property to Fabio Banegura, individually, to be deeded immediately by deed of trust to Mystic.[4] During the process leading up to this simultaneous transaction, Mystic Investments conducted a

---

3. The land records of Baltimore County reflect that the property was titled in the name of Fabio K. Banegura. The same records reflect that prior to the date of the Mystic Deed of Trust, the property had been titled in the names of Fabio K. and Olive Banegura.

4. That deed was described as "THIS REFINANCE DEED OF TRUST," and the title source of the property, as

BEING the same property which by Deed dated of even date herewith and recorded or intended to be recorded among the Land Records of Baltimore County immediately prior hereto, was granted and conveyed by Fabio K. Banegura and Olivia K. Banegura to Fabio K. Banegura.

The within Deed of Trust is to refinance the existing Deed of Trust by the original Mortgagors of said subject property which is his principal residence.

search for judgments entered against Fabio and Olive Banegura in Baltimore County. Because it had been indexed improperly and recorded under the name Baneguna, appellants' judgment was not discovered during Mystic Investments' search. The Refinance Deed of Trust was in the principal sum of $92,000.00, of which $64,533.87 was used to satisfy the original mortgage lien on the property, and an additional $8,300.00 was used to satisfy the three aforementioned judgments.

Believing that their judgment was superior to Mystic Investments' Deed of Trust, appellants sought to enforce their judgment by execution and judicial sale of the property. Upon learning of appellants' enforcement action against the property, Mystic Investments filed a Motion to Stay Proceeding and/or Release of Property From Levy pursuant to Maryland Rule 2–643(e). In its motion, Mystic asked the circuit court to enter an order declaring that it had a priority lien on the property to the extent of the prior first mortgage and the three additional judgments under the doctrine of equitable subrogation. Mystic Investments further alleged that it was entitled to a priority lien because the Waicker judgment had been misindexed.[5]

At the hearing on September 11, 1998, appellants argued that, even assuming *arguendo* that equitable subrogation applied, their judgment lien was senior to the judgments paid by Mystic Investments because only their judgment was against the Baneguras jointly and had attached when the Baneguras

---

5. The Motion to Stay Proceeding stated, in part:

 3. Unfortunately, when the judgement was indexed by the Clerk, Circuit Court for Baltimore County, it was mistakenly indexed under the last name Baneguna, not Banegura. Attached as Exhibit "A" is a copy of the Notice regarding recording of the judgement in the Circuit Court for Baltimore County.

 . . . .

 7. Prior to conducting the refinance, Mystic Investments, Inc. did a check of judgments against the Baneguras in Baltimore County and the judgment check did not disclose the above-captioned judgment held by the Waickers since it was improperly indexed under the name Baneguna.

owned the property as tenants by the entirety. Mystic argued, in relevant part: [6]

> THE COURT: In this case, you are suggesting there wasn't even negligence, because the judgment was not indexed correctly, so even—
>
> MR. GILLISS [Mystic's attorney]: Exactly.
>
> THE COURT: —so even exercising due diligence, your client could not have found it.
>
> MR. GILLISS: That is correct.
>
> But even if there was negligence, it doesn't make a difference.

And later, Mystic argued:

> I think that the facts, themselves, call out for the court to accept that Mystic had no actual knowledge of that Waicker lien, because if they had, they would have paid it off, as they paid off the others, and there has been an explanation as to why it [the lien] wasn't discovered[, i.e., the misindexing].

The Circuit Court for Baltimore County issued an order on September 28, 1998, granting Mystic Investments' motion and giving Mystic a priority interest in the property. In its ruling, the trial court stated, in part:

> The fourth consideration concerns the lack of responsibility of Mystic to search the land records. Mystic did do a title search as indicated by the inclusion of a search report by Chicago Title Insurance Company dated 9/19/97. The reason the Waicker judgment was not found by its search is because the judgment was incorrectly filed under the name Baneguna, not Banegura. Given that Mystic did perform an adequate title search that did not find the misfiled judgment, Mystic cannot be said to have failed in its responsibility to search the land records.

---

**6.** Mystic Investments also argued at trial that the doctrine of equitable subrogation applied to give its lien priority over the alleged judgment lien of appellants. As we indicate in the body of the opinion, appellants agree that, as to most of Mystic Investments' lien, the elements of the doctrine apply and afford priority to Mystic.

Appellants submitted a Motion to Alter, Amend and/or Revise the Judgment, which was denied.

■ Appellants do not dispute that Mystic Investments is entitled to equitable subrogation to the extent of the deed of trust lien and the three judgments it paid off as part of the refinancing. The issue before the Court is whether the Circuit Court for Baltimore County erred in holding that Mystic Investments' Deed of Trust lien has priority over appellants' judgment lien because appellants' judgment was misindexed under the name Baneguna rather than the name of the title owners as reflected in the land records of Baltimore County—Banegura—and therefore never attached to the property in Baltimore County titled in the land records to the Baneguras.

■ We hold that generally, absent evidence of actual knowledge, when a judgment is indexed and recorded under a name different than the name of the title holder as reflected in the land records,[7] it fails to become a lien against that real property in respect to subsequent lien-holders or purchasers without actual knowledge. Notice will be found for judgments, which are indexed under incorrect or misspelled names only when the facts and circumstances are such that a party has actual knowledge that the judgment has been indexed under an incorrect or misspelled name or has actual knowledge that the debtor used or was known under the misnomer. The Circuit Court for Baltimore County correctly ruled that Mystic Investments had a priority interest over appellants because appellants' judgment was indexed improperly under the surname [8] Baneguna rather than Banegura and because they failed to present any evidence that Mystic actually knew

---

**7.** In the context of this opinion, the term "incorrect" refers to the indexing of a name in the judgment index that is different than the name of the title holder of the property as reflected in the land records. Whatever name is incorrect, if the name indexed in the judgment index is not the same as the name of the title holder of the property at issue, no lien attaches to the property.

**8.** *Black's Law Dictionary* 1443 (6th ed.1990) defines *Surname* as "[t]he last name; the name common to all members of a family." When we refer to surname in this opinion we are referring to a party's last name.

the judgment was indexed under any name other than Banegura.

## II. Analysis and Discussion

The fundamental purpose of this present action is to determine the priority of judgment liens against a particular piece of real estate. Maryland Code (1974, 1998 Repl.Vol.), § 11–402(c) of the Courts & Judicial Proceedings Article is critical in making this determination:

> (c) *Judgment of another court.—If indexed and recorded as prescribed by the Maryland Rules,* a money judgment constitutes a lien on the judgment debtor's interest in land located in a county other than the county in which the judgment was originally entered, except a lease from year to year or for a term not more than five years and not renewable. [Emphasis added.]

The relevant provisions of the Maryland Rules are Rules 2–621(b) and 2–623(a). They state, respectively:

> (b) *Other counties.* Except as otherwise provided by law, a money judgment that is recorded and indexed pursuant to Rule 2–623(a) constitutes a lien from the date of recording in the amount of the judgment and post-judgment interest on the defendant's interest in land located in the county of recording.

Md. Rule 2–621(b).

> (a) *Judgment of another court.* Upon receiving a copy of a judgment of another court, certified or authenticated in accordance with these rules or statutes of this State, or of the United States, the clerk shall record and index the judgment if it was entered by . . . (c) another circuit court of this State. . . .

Md. Rule 2–623(a).[9] The primary goal of section 11–402(c), and Maryland Rules 2–621(b) and 2–623(a) is to provide clear-

---

**9.** We are concerned in the case *sub judice* with the priority of *judgment* liens. Different sections of the Maryland Code apply to conveyancing. *Standard Finance Co. v. Little,* 159 Md. 621, 152 A. 264 (1930), con-

cerned an action for damages against a clerk of court who had failed to index a mortgage accepted for recordation. We held for the clerk on the basis that the indexing provisions were not, at that time, part of the recordation statutes; thus, the plaintiff had not suffered any loss because it had not lost the priority of its mortgage. Later, in *Frank v. Storer*, 308 Md. 194, 517 A.2d 1098 (1986), we, based solely upon the *Standard Finance* holding, held that instruments correctly recorded, but not correctly indexed, did not lose the priority accorded them by the recordation statutes. (The clerk declined to index the document modifying a mortgage because the document contained no correct reference to the mortgage being modified.) Our decision in *Frank* was based in large part on *Standard Finance* and our reluctance to depart from it when there had been no apparent legislative attempt to modify it.

*Standard Finance*, however, was an unusual case. It did not involve a contest as to priorities between competing lien holders as in the case at bar. It was a case of a lienholder presuming it had lost its priority by reason of the clerk's failure to index its instrument, and suing the clerk for the damages it presumed it had sustained. Moreover, the *Standard Finance* Court based its position that indexing should not affect the priorities of recording on the fact that indexing requirements at that time were found in a completely unrelated area of the Maryland Code. Recording matters were found in Article 21 and indexing matters were found in Article 17.

"The lien of a mortgage is preserved under the statutory provisions that deeds shall, in order to pass title, be executed, acknowledged and recorded, and that mortgages shall be executed, acknowledged and recorded as is required with respect to deeds. Code, art. 21, secs. 1, 13, 15 and 32.

The relevant sections of that article, which covers the subject of conveyancing, speak of recording as necessary to the passing of title without referring to an index. It is in article 17 of the Code, concerning clerks of courts, that the provisions for an index are found. Sections 59, 61 and 62.... It is the general index from which, according to the allegations, the entry was omitted in this instance.... [I]t seems to the court that the indexing has not been conceived of as part of that recording."

*Standard Finance*, 159 Md. at 622–23, 152 A. at 265.

The Court went on to recognize the danger of misindexing, but ultimately deferred to the Legislature to address the problem:

"The argument for including the indexing within the recording, as an essential part of it, is based upon the importance of the indexing and the danger of losses to persons dealing with property if there may be instruments completely effective to pass title without mention in the indexes. The importance and the danger are obvious. And it is conceivable that a legislature might deem it wise to avoid the danger by including the indexing with the recording as essentials to the complete passing of title."

*Id.* at 623–24, 152 A. at 265.

Today indexing provisions *are* included as part of the Real Property Article (1974, 1995 Repl.Vol.), in section 3–302. Moreover, they have been incorporated into a separate subtitle with the provisions on record

cut rules for the indexing and recording of judgment liens. Although appellants had a deficiency judgment in Baltimore City against the Baneguras (or Banegunas),[10] it would not constitute a lien against real property titled to the Baneguras among the land records in Baltimore County unless filed and correctly indexed in Baltimore County. Such a requirement is not new in Maryland. "[A] judgment is not a lien on land in another county until a certified copy of the docket entries in the case taken from the court where the judgment was rendered shall be recorded." *Brunsman v. Crook*, 130 Md. 661, 663, 101 A. 1019, 1020 (1917) (quoting 2 *Poe on Practice* § 377 (3d ed.)). Only if appellants correctly indexed and recorded the judgment in the Circuit Court of Baltimore County under the name Banegura would their judgment rendered and entered in the Baltimore City Circuit Court normally become a lien on property titled to the Baneguras among the land records in Baltimore County. "It is the duty of a person offering an instrument for record to see that it is both properly recorded and properly indexed." *Commonwealth v. Roberts*, 392 Pa. 572, 586, 141 A.2d 393, 400 (1958); *see In re 250 Bell Road*, 479 Pa. 222, 228 n. 3, 388 A.2d 297, 300, n. 3 (1978).

The system of indexing and recording judgment liens is designed, at least in part, to provide an organized and efficient method by which the general public can effectively determine whether there are money judgments that act as liens on a particular parcel of land. In the absence of actual knowledge,

---

books, *"Subtitle 3. Record Books and Indexes,"* although not found in the same subtitle as the priority provisions.

More importantly, for the purposes of the instant case, as we discuss, *infra*, judgment liens, by statute, do not become liens until "indexed and recorded." Accordingly, the holdings of *Standard Finance* and *Storer*, as to deeds, mortgages and similar instruments, are not controlling in the instant case.

10. As we have noted earlier, the docket entry evidencing the original judgment in Baltimore City was also entered under an incorrect spelling of the judgment debtor's names—Banegu*n*a. That case was, however, filed in the correct names against the Baneguras. We do not here address the lien status in Baltimore City of the original judgment.

indexing and recording give constructive notice of any and all liens that may affect real property. To promote this goal, judgment liens are indexed and recorded alphabetically by surname. If there is more than one judgment indexed under the same surname against different persons, then they are organized alphabetically by first name. Additionally, if there is more than one judgment indexed under the same surname and first name against different persons, they are organized alphabetically by middle name. In other words, indexing and recording is done in basic alphabetical order. *See* Md.Code (1974, 1996 Repl.Vol.), § 3–302(a) of the Real Property Article ("The clerk of the circuit court ... shall make and maintain a full and complete general alphabetical index of every deed, *and other instrument* in a well-bound book in his office." (Emphasis added.)). The indexing requirement of alphabetizing of names in judgment indexes is the foundation by which judgment liens are researched. The reason is simple. If a judgment is not indexed in the proper fashion, i.e., in alphabetical order, a searcher may never find it.

By looking at their plain and unambiguous language we interpret the coordinated workings of section 11–402 of the Courts & Judicial Proceedings Article and Maryland Rules 2–621(b) and 2–623(a), to mean that a money judgment constitutes a lien on the judgment debtor's interest in real property titled in the land records of a particular county only if *correctly* indexed and recorded in the name of the owner of record of the property against which the lien is sought to be imposed.[11] *See In re Humphrey*, 165 B.R. 578, 580 (Bankr. D.Md.1993); *Kroop & Kurland v. Lambros*, 118 Md.App. 651, 664, 703 A.2d 1287, 1293 (1998). This interpretation makes obvious sense because of the nature of the alphabetized recording system. The key word here is "correctly"; if a party, or the clerk of a court, for whatever reason, indexes the

---

11. If property is titled in the respective land records in a name or names other than the name or names against whom a judgment is rendered, that judgment is normally not a lien against such property absent further proceedings to include the names of the title owner of the property at issue, as named judgment debtors.

judgment under a name that is not identical to the name in which real property in the county is held of record, the general public will not be on constructive notice that a judgment lien exists against that particular piece of real estate. There is no designation of, or reference to, any requirement for a property description in the judgment lien index under the Maryland statutes or rules; therefore, correct indexing and recording *of names* is essential in the Maryland scheme of providing notice of possible liens against a person's property and may play an integral part in a party's decision to invest in, or allow credit on, a piece of real property. "[I]t is a well settled rule of law that a judgment is a general lien on all the real estate which the judgment debtor owns at its date, and that it attaches to all that he may thereafter acquire...." *Ahern v. White,* 39 Md. 409, 417 (1874).

A money judgment entered in one county constitutes a lien on the judgment debtor's interest in real property titled in his or her name in the land records of another county only if the names of the judgment debtors are indexed and recorded correctly in the other county. Thus, absent actual knowledge of the incorrect indexing by the subsequent party, a judgment indexed under an incorrect name or misnomer generally will not be enforceable as a lien against the property. Moreover, a court's ability to ascertain the existence of actual knowledge is limited to the evidence that is presented. We hold that a judgment indexed under an incorrect name of the judgment debtor is presumed to be insufficient to provide notice of a lien on real property titled in the land records under the correct name of the judgment debtor. This presumption will be rebutted only if the facts and circumstances indicate that a party, against whom the alleged prior lien is sought to be enforced, had actual knowledge of the misnomer. In the absence of any such evidence, such an incorrectly indexed judgment will not be accorded priority against innocent third persons.

In *Messinger v. Eckenrode,* 162 Md. 63, 158 A. 357 (1932), Susanna Messinger conceded that she never conducted a

search of the judgment index, that the judgment was indexed under the correct surname and correct middle names of the judgment debtors (although not under the correct first name), and that she knew that the parties commonly went by their middle names under which the judgment was indexed. In other words, Messinger would have had actual knowledge that the indexing was wrong had she conducted a title examination. Under the facts of that case, we held that there was sufficient evidence presented that Messinger, *because of her actual knowledge,* would have found the judgment if a proper search of the judgment index had been conducted. Crucial to our interpretation was not only that no search was conducted, but that Messinger actually knew the property owners by the names under which the judgment was indexed: "If any one had inspected the index in the clerk's office, he would have found the name 'Heagy' and the Christian names *by which they were known to the appellant....*" *Id.* at 69, 158 A. at 359 (emphasis added).

In other words, a court may employ a subjective test to consider the independent knowledge of an involved party. Whether a party has *actual* knowledge that a judgment is indexed under an alternative spelling or incorrect name is the primary factor a court should consider in determining whether, had a title examination been conducted, the party would have found the specific judgment. If the party has actual knowledge that the judgment was indexed, or likely to be indexed, under an incorrect name, the party has a duty to search under that incorrect name because, due to the party's actual knowledge, the party presumably would have discovered the misindexed judgment.

In *Messinger,* Susanna Messinger was aware that J. Edward Heagy and Mary Edith Heagy went by the names Edward Heagy and Edith Heagy, under which the judgment was indexed; therefore, she had actual notice of the alternate names and would have known that the judgment constituted a lien had she conducted a title examination. In the case at bar, there is absolutely no evidence of any actual knowledge on the

part of Mystic Investments. If a party has knowledge that a judgment debtor is known by more than one name, the party has the duty to examine, or cause to be examined, the records under all names known to them. If he or she has no such knowledge, their obligation in examining the judgment records is fulfilled by examining the indexes and records under the name of the title owner of the property as that name is reflected in the land records of the particular county.

In *Frederick Ward Associates, Inc. v. Venture Inc.*, 99 Md.App. 251, 636 A.2d 496 (1994), the Court of Special Appeals dealt with a fact pattern similar to *Messinger* and the case *sub judice.* In *Frederick Ward,* the Court of Special Appeals considered the effect misnomers in first and middle names had on the indexing and recording of judgment liens. That court held that a judgment indexed and recorded against the name "Chris Walker" did not constitute a lien against "John C. Walker." The court reasoned:

> The sole function of a name is to identify the person whom it is intended to designate, and therefore all that is legally necessary in the docketing and indexing of judgments is that the defendant should be individuated with a degree of accuracy sufficient either to lead a reasonably careful searcher to conclude that he is the person who is the object of the search, or to suggest to the searcher the wisdom of inquiry to ascertain the fact. Where there is enough to put an ordinarily prudent person upon guard, inquiry becomes a duty.

*Id.* at 257, 636 A.2d at 498–99 (quoting *Russeck v. Shapiro,* 170 Pa.Super. 89, 92, 84 A.2d 514, 515 (1951) (quoting *Coral Gables, Inc. v. Kerl,* 334 Pa. 441, 447, 6 A.2d 275, 278 (1939))).

In *Frederick Ward,* the Court of Special Appeals noted that "appellant produced no evidence that appellee should have known, at the time the property was conveyed, that John C. Walker and Chris Walker were the same person." *Id.* at 256, 636 A.2d at 498.

In the case before us, the court made a factual determination that the judgment against Chris Walker was not prop-

erly indexed so as to provide notice to subsequent bona fide purchasers of property titled to John C. Walker. We cannot conclude that this determination was clearly erroneous. Rule 8–131(c).

*Id.* at 258, 636 A.2d at 499 (some citations omitted); *see Department of Pub. Assistance v. Reustle,* 358 Pa. 111, 114–15, 56 A.2d 221, 224 (1948); *Coral Gables,* 334 Pa. at 447, 6 A.2d at 278; *Susquebanc Lease Co. v. Lucchesi,* 707 A.2d 540, 542 (Pa.Super.1998); *Russeck,* 170 Pa.Super. at 92, 84 A.2d at 515. Frederick Ward Associates had no indication that a judgment against John C. Walker could have been indexed under the name Chris Walker. While the Court of Special Appeals' specific holding in *Frederick Ward* was couched in terms of lack of constructive notice, it was also clear that there was no actual knowledge of the misnomer; therefore, the judgment did not constitute a lien.

With our holding in the case *sub judice,* we limit the holding of *Frederick Ward* to require, when a judgment lien is misindexed, evidence of actual knowledge of alternate names, or actual knowledge of the misindexing itself by the party against whom the misindexed lien is asserted, in order for the misindexed judgment lien to take priority over subsequently recorded and correctly indexed liens, or to follow the property after transfer by the judgment debtor to a bona fide purchaser for value who does not have actual knowledge of the misindexed lien.

No one concise rule can be established concerning the status of a misnomer in a judgment lien by looking to the caselaw of our sister states. As one court has said: "There are in the books many cases dealing with judgments against debtors whose names are entered in abbreviated or incorrect forms, but it is difficult, if not impossible, to deduce from them a simple rule which furnishes the key to a ready solution of each and every case." *Coral Gables,* 334 Pa. at 444, 6 A.2d at 277.

Our neighboring states of Pennsylvania and New Jersey offer insight into the problems of judgments improperly indexed under incorrect first names, with Pennsylvania appar-

ently treating the issue differently depending upon the case. In *Jaczyszyn v. Paslawski*, 147 Pa.Super. 97, 24 A.2d 116 (1942), John Paslawski had a judgment against *Nikolai* Borys that was entered incorrectly in the judgment index under the name *Mikola* Borys.[12] Mrs. Jaczyszyn's attorney searched the judgment index but found no record in favor of Mr. Paslawski against Nikolai Borys. The Pennsylvania Superior Court ruled in Mrs. Jaczyszyn's favor, holding that the judgment indexed under Mikola Borys did not constitute constructive notice of a judgment against Nikolai Borys. The court reasoned:

> It was the duty of the plaintiff in the judgment, Mr. Paslawski, to see that [the name recorded in the judgment index] was correctly entered.
>
> There was no duty resting on Mrs. Jaczyszyn, or her attorney, to search the records for any other name than the one Borys was always called and known by, *Nikolai* Borys.

*Id.* at 101, 24 A.2d at 118 (citations omitted).

In *Russeck*, 170 Pa.Super. 89, 84 A.2d 514, the Pennsylvania Superior Court again was faced with an incorrectly indexed judgment. In that case, the defendant had a judgment against *Abraham* and Edith Wagner, which was indexed incorrectly under the names *Albert* and Edith Wagner. The court held that such an indexing failed to constitute constructive notice because of the distinct origins of the names:

> Albert is an Anglo–Saxon name of Teutonic origin, and by no process can it be demonstrated that it is a variant of the ancient Semitic name of Abraham. There is no similarity in either the spelling or in the sound which in the use of one might suggest the other.

*Id.* at 92, 84 A.2d at 516.

The New Jersey Superior Court has also considered whether judgments indexed under incorrect first names are sufficient to attach a lien to property. In *Jones v. Parker*, 107

---

**12.** "[T]he Ukranian capital *N*, in writing as distinguished from printing, [is] similar in appearance to our written *M*." *Id.* at 99, 24 A.2d at 117.

N.J.Super. 235, 258 A.2d 26 (1969), Jones held a judgment against Asa C. Parker, which was indexed incorrectly under the name Ace Parker. Subsequently, Parker placed a mortgage against the property and another subsequent judgment was recorded against Parker. The court held that the incorrectly indexed judgment had no priority in respect to the subsequent liens, saying "[u]nless the judgment entered is against the same name as that in which record title to real estate stands, ... no lien exists." *Id.* at 242, 258 A.2d at 30. Similarly, in *Venetsky v. West Essex Building Supply Co.*, 28 N.J.Super. 178, 100 A.2d 291 (1953), that court held:

A judgment indexed under a first name different and distinct from the real first name of the judgment debtor does not constitute a lien upon the debtor's real estate as against a subsequent purchaser or encumbrancer for value without notice.

Judgments being indexed alphabetically in the office of the Clerk of the Superior Court, it is not to be supposed that a proper and adequate judgment search against Clarence F. Gottsleben would reveal a judgment against Fred Gottsleben.

Furthermore, to hold that a bona fide purchaser of real estate would take title thereto subject to a judgment theretofore entered against a former owner where the judgment was not indexed under the correct Christian name of such judgment debtor, would tend to destroy the value of the statutory system of recording land titles and liens and encumbrances thereon and to render titles to real estate most hazardous and uncertain. In the language of the court in [*Lembeck & Betz Eagle Brewing Co. v. Barbi*, 90 N.J.Eq. 373, 106 A. 552 (1919) ]:

"An otherwise perfect chain of title search, based upon a search in the real names of the parties as they appear of record, would not be worth the paper it was written on, because you could never tell what outstanding deeds or [e]ncumbrances might exist of record affecting the premises in fictitious names.

"To sustain the Brewing Company's mortgage as the prior lien would be to sustain the illogical and intolerable situation thus outlined, and would make ducks and drakes of the recording system in New Jersey. A search would be useless, and the result would be confusion and confusion worse confounded."

*Id.* at 190, 100 A.2d at 297 (some citations omitted).

There are, to be sure, states that call for a less-strict application of notice principles, even in cases of misrecording and misindexing of names in judgment or land records. Collectively, they might support a majority position among the other states of some type of *de minimis non curat lex* standard, in respect to imposing a duty to find closely related (or sometimes not so closely related) names in respect to misnomer judgments or misindexed judgments. They mainly are determined on a case-by-case factual basis with little clear guidance, and offer, in our view, little support for the reliance on statutorily required recordation and correct indexing that we believe to be of paramount importance to the process of property transfers in this state. That process is vital in assuring the accuracy of titles in Maryland; accuracy is important itself in guaranteeing the marketability of property, and thus the value of property in our state.

While few of the out-of-state decisions specifically state that they are relying on the doctrine of *idem sonas*,[13] they appear

---

**13.** The doctrine of *idem sonans* has been defined as:

"The arbitrary orthography and pronunciation given to proper names, and the variant spelling resulting from ignorance have led the courts to formulate the doctrine ..., which means 'sounding the same.' Under this doctrine a mistake in spelling the name of a party is immaterial if both modes of spelling have the same sound. The grounds for applying the doctrine to slight variations in spelling is that of de minimis non curat lex—the principle that the law is not concerned with trifles.... Thus, it is not every mistake in names which will invalidate an instrument or proceeding.... Since words are intended to be spoken, bad spelling will not vitiate their intended effect where the sound is substantially preserved."

*National Packaging Corp. v. Belmont,* 47 Ohio App.3d 86, 88 n. 1, 547 N.E.2d 373, 374 n. 1 (1988). In *National Packaging Corp.,* the intermediate appellate court declined to apply the doctrine in a judgment lien

to be based, at least in appreciable part, on similar principles. In *Susquebanc Lease Co.*, 707 A.2d 540, for instance, the Pennsylvania Superior Court considered whether a judgment against Camill *Louis* Lucchesi, which was indexed under Camill *Lewis* Lucchesi was sufficiently similar to constitute a lien against real estate. The court said that "appellate courts have resolved such cases on the basis of the factual circumstances and practical considerations present in each case." *Id.* at 542. The court concluded:

> "Camill Lewis Lucchesi" appear[s] on the very same or adjacent page as other entries against the name Lucchesi, which did not include the middle name "Lewis." Two judgment liens had been recorded ... against "Lucchesi." Another was filed against "C.L. Lucchesi, a/k/a C. Louis".... These several judgments filed against an individual with a name very similar to that of the seller of the property on the same or adjacent pages should have alerted a reasonably careful searcher to verify the identity of the judgment debtor rather than relying solely on the name as listed in the judgment index.

*Id.* at 542–43. *See Reustle*, 358 Pa. at 117, 56 A.2d at 224 (holding that a judgment indexed in the name of Rosie Reustle constituted notice of a judgment against Rosie C. Reustle); *Coral Gables*, 334 Pa. at 448, 6 A.2d at 278 (holding that a judgment indexed in the name of Caroline Kerl constituted notice of a judgment against Caroline C. Kerl). *But see Garner v. Cluck*, 209 Ark. 912, 916, 193 S.W.2d 661, 663 (1946) ("Where an initial is employed instead of the first name of the judgment debtor, an error therein is as fatal as it would be in the name itself. In regard to the middle initial, some authorities hold that if a middle initial is used, it must be the proper one, especially when there are other persons in the district who have a similar name."). These cases indicate that those courts are generally less inclined to hold a mistake in a middle name or initial to as high of a standard as a mistake in a first

---

case. See the discussion pertaining to our holding, and a further discussion of *National Packaging Corp., infra.*

name. Thus, an error in a middle name, according to those courts, is less likely to hinder constructive notice and be fatal to lien priority.

Whether a judgment lien is indexed and recorded incorrectly if listed under a misspelled surname is a case of first impression in this Court. When looking to our sister states, as indicated, *supra,* most cases concerning misspelled surnames appear to have been decided on *idem sonans* principles, which means that "a mistake [or variance] in spelling the name of a party is immaterial if both modes of spelling have the same sound." [14] *National Packaging Corp. v. Belmont,* 47 Ohio App.3d 86, 88 n. 1, 547 N.E.2d 373, 374 n. 1 (1988); *see also Black's Law Dictionary* 744 (6th ed. 1990) ("Under the rule of 'idem sonans,' variance between allegation and proof of a given name is not material if the names sound the same or the attentive ear finds difficulty in distinguishing them when pronounced.").

This Court has hesitated to embrace this doctrine and applied it only in two older cases. *See State v. Warfield,* 139 Md. 74, 76, 114 A. 835, 836 (1921) (holding that an indictment using the word "tract" instead of "track" would be saved by the doctrine of *idem sonans* ); *Elliott v. Knott,* 14 Md. 121, 135 (1859) ("The names *'Penryn'* and *'Pennyrine'* should be regarded, in the absence of all proof to show they belong to different tracts of land, as applicable to the same, and as *idem sonans.*"). Both *Warfield* and *Elliott* are distinguishable from the case *sub judice.* Neither of them involved the priority of liens arising out of misindexing. Additionally, neither involve the misspelling of a party's name, much less the misspelling of a party's name in a judgment index in which the only way to

---

**14.** The Pennsylvania Supreme Court published two older decisions based on *idem sonans, Bergman's Appeal,* 88 Pa. 120 (1879) (holding that a judgment against Henry Hackman filed as Henry Heckman was upheld as correctly entered), and *Myer v. Fegaly,* 39 Pa. 429 (1861) (holding that a judgment against Bubb filed as Bobb was filed correctly), which appear to be inconsistent with the later holdings in *Jaczyszyn* and *Russeck. See Coral Gables,* 334 Pa. at 444–45, 6 A.2d at 277.

find the judgment is alphabetically by the judgment debtor's name.

We hold that the doctrine of *idem sonans* generally does not apply to the indexing and recording of judgment liens. To hold otherwise, in the absence of additional evidence of the facts and circumstances relating to a party's actual knowledge, would lessen the functional necessity of the alphabetized recording system to the free marketability of property titles in Maryland. We note that the Court of Appeals of Ohio rejected the doctrine in *National Packaging Corp.*, 47 Ohio App.3d 86, 547 N.E.2d 373, in dealing with a fact pattern similar to the case *sub judice*. In that case, a judgment against Michael Bolan was indexed and recorded under the incorrect name Michael Bolen, a similar misspelling to that in the case at bar. That court first noted the position of the judgment lien holder:

> [I]t argues that the certified judgment filed under a similar sounding but incorrect spelling of the debtor Bolan's name, retaining the same initial letters as the correctly spelled name, should have been held to give rise to a valid lien for the benefit of NPC and to provide the appropriate constructive notice to title searchers.

*Id.* at 88, 547 N.E.2d at 374. The Ohio court then discussed several old Ohio cases of various types in which the doctrine of *idem sonans* had been applied, noting that in each case there was other evidence from which a proper identification of the relevant party would have been actually known: *Lessee of Pillsbury v. Dugan's Administrator*, 9 Ohio 117 (1839) (involving a petition for partition sale in which the notice contained a description of the property); *Buchanan v. Roy's Lessee*, 2 Ohio St. 251 (1853) (dicta regarding the misspelling of a party's name in a publication notice in a quiet-title action); and *Turpin v. State*, 19 Ohio St. 540 (1869) (involving a variance in the spelling of a forged signature in an exhibit and the indictment, when there was other evidence of the identity of the person whose name was forged). *See National Packaging Corp.*, 47 Ohio App.3d at 88–89, 547 N.E.2d at 374–75.

The Ohio court also noted a 1936 and a 1943 case, both cited by one of the parties, which it declined to follow, stating:

> We note, however, that in *Rauch* [*v. Immel,* 55 Ohio App. 71, 8 N.E.2d 569 (1936),] the doctrine was applied to a misnomer in a notice of a lawsuit, and in *Horton* [*v. Matheny,* 72 Ohio App. 187, 51 N.E.2d 41] (1943) it was applied to a misspelling in a deed description. In these two cases, as in *Pillsbury, Buchanan,* and *Turpin,* the error did not involve misspellings in a name index.

*Id.* at 89, 547 N.E.2d at 375. The court then noted another 1930 case applying the doctrine that appeared to be closer factually, but, nonetheless, declined to follow it, stating:

> In the matter *sub judice,* three experts have given affidavits stating that the doctrine of *idem sonans* should not be applied today as a standard for determining the marketable title of real estate on the basis of irregularities in last names or surnames, and that by custom it is not applied by abstractors in southwestern Ohio.

*Id.* at 89, 547 N.E.2d at 375.

The court rejected the doctrine, noting its inapplicability in modern society in respect to misspelled names in judgment indexes:

> We hold that the doctrine of *idem sonans* is inapplicable to names that are misspelled in judgment-lien name indexes. We are not a frontier society of pioneers with little education or an absence of precedent and system. Since the [Ohio] Supreme Court issued its opinion in *Pillsbury,* we have experienced a tremendous growth in the population and the economy, and those developments have spawned countless real estate sales and a volume of litigation resulting in an abundance of indexed judgment liens. In modern society we cannot overlook matters of form by continuing to indulge the outmoded premises of our societal infancy. To impose rigidly the doctrine of *idem sonans* to name indexes now maintained for judgment liens would tax all land abstractors beyond reasonable limits and require them to be poets, phonetic linguists, or multilingual specialists. The additional time necessary to examine name indexes under

such a stringent doctrine would make the examinations financially prohibitive.

The appellees, in their brief, demonstrate the difficulty in applying the doctrine of *idem sonans* to the range of spellings implicated in the instant case: Bolan, Bolen, Bolin, Bowlin, Bowlan, Bowlen, Bolun; the addition of double "l," "ein," and "ien" spellings does not even exhaust all conceivable spelling possibilities. The impossibility of the task created by the doctrine of *idem sonans* is further illustrated by the fact that we, as a society and state, are no longer a small homogeneous population primarily of European abstraction. Since our infancy, we have added Asian, African, South American, Oriental and Arabic surnames. The spelling, sound, and pronunciation of our population's surnames create an insurmountable burden for an abstractor to face in appreciating all the possible variations.... [A] strict application of the doctrine [of *idem sonans* ] today would leave a real estate purchaser with a lingering fear that misspelled lien-holders, either negligently or deliberately, might be lurking under the *idem sonans* doctrine in the judgment-debtor indexes.

*Id.* at 90, 547 N.E.2d at 375–76.

■■■■ Allowing for misnomers even in the form of minor misspellings would undermine the entire indexing system of judgment liens. A minor misspelling may render a judgment "undiscoverable" by even the most prudent of searchers. As in *Belmont,* in the case at bar the name at issue, Banegura, could be misspelled in an almost inexhaustible number of ways: Baneguna, Baneguma, Banegupa, Baneguha, Banegure, Baneguri, Baneguro, Banguro, Beneguro, Binegua, Benigura, Benegara, ad infinitum. As we stated, *supra,* one of the purposes of the alphabetized index and records system of judgment liens is to provide an organized and efficient method by which the general public can easily and effectively research money judgments acting as liens on a particular parcel of land. It serves, if done properly, to give constructive notice to subsequent purchasers, encumbrancers, or others who may deal with the title to the real estate, of any and all judgments

that constitute liens on real property. It does so by providing a method whereby title examiners can examine the judgment index under the name of the title owner, as that name is recorded among the land records of a particular jurisdiction. The only way constructive notice is sufficient is if the correct name of the title owner of the land against which the lien is sought to be enforced is indexed and recorded in the judgment lien indexes. "[T]o constitute notice to ... encumbrancers, a judgment must be properly docketed by the correct [first] name and surname of the judgment debtor." *Venetsky*, 28 N.J.Super. at 187, 100 A.2d at 295. In the case of judgment liens there is no designation of, or reference to, the property in question to aid in the conveying of notice to the searcher. The only way to conduct research in the judgment lien index is by the name of the title holder of the land as that name is reflected in the land records—this is why the information included, especially the surname, needs to be accurate.

We hold that notice will be found for judgment liens against a particular property, which are indexed under incorrect or misspelled names only when the facts and circumstances are such that the subsequent party has *actual* knowledge that the judgment is indexed under an incorrect or misspelled name, or has *actual* knowledge that an owner of property being subject to search has, or is commonly known by, the alternate name. In the instant case, appellants failed to proffer any evidence to establish that Mystic Investments had any reason to know to search for the judgment under any name other than Banegura. In the absence of such information we cannot say that the decision by the trial judge was clearly erroneous and we are unable to reverse the decision. *See* Maryland Rule 8–131(c).[15] Appellants simply have not presented any evidence that Mystic had actual knowledge of

---

**15.** Maryland Rule 8–131(c) states: "When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."

the misnomer. The Circuit Court for Baltimore County correctly ruled that Mystic Investments had a priority interest over appellants' lien because appellants' judgment was indexed incorrectly under the name Baneguna rather than Banegura.

The spelling mistake appears to be comparatively minor in the case *sub judice,* as it was the seventh letter in an eight letter name that was incorrect and the names may have been indexed on the same page or adjacent pages of an index; however, it would have been an entirely different story if it was the first or second letter of the surname that was incorrect. Canegura or Bunegura might never have been found, even by the most prudent of searchers. It could be pages, or scores of pages, from the correct position in the index, or even in a different index book or different room of the clerk's office. The next error brought to this Court's attention may be greater, and the one after, more so.

Considering that a misspelling might render a judgment impossible to find, in the absence of evidence of actual knowledge of the misspelling or misnomer, there is a presumption that a judgment indexed under an incorrect or misspelled name will not be found by a party examining title to property under the correct name as reflected in the land records.

As one court has said, "[i]t is the duty of a person offering an instrument for record to see that it is both properly recorded and properly indexed." *Roberts,* 392 Pa. at 586, 141 A.2d at 400; *see In re 250 Bell Road,* 479 Pa. at 228 n. 3, 388 A.2d at 300 n. 3. In the case *sub judice,* appellants failed to correct the incorrect indexing of the judgment in the Baltimore County Circuit Court under the name Baneguna. The Baltimore County Clerk's Office put appellants on notice that their judgment had been indexed under the name Baneguna rather than Banegura. In the four years that elapsed as appellants waited for the judgment to be enforced, they never attempted to correct this error.[16] They were the only party

16. The Waickers attempted to enforce the judgment during this period, but the attempts were stayed due to successive bankruptcy proceedings by the Baneguras.

who knew or could have known, and who should have known, of this error; they were the only party in the position to correct this error, and they failed to do so. Between the parties, only appellants had notice of the incorrect indexing.

 A party who records a judgment in a judgment index has the duty of ensuring that the name entered into the index is spelled correctly and indexed correctly in order to protect the priority of their lien. Future persons involved with the property simply have no way to ensure the accuracy of indexing.

 We hold that the risk falls on the person who has the power to avoid it: the judgment lienholder who submits the judgment for recordation and indexing. As the Pennsylvania Superior Court held in *Jaczyszyn*, 147 Pa.Super. at 101, 24 A.2d at 118:

It was the duty of the plaintiff in the judgment, Mr. Paslawski, to see that [the name recorded in the judgment index] was correctly entered.

There was no duty resting on Mrs. Jaczyszyn, or her attorney, to search the records for any other name than the one Borys was always called and known by, *Nikolai* Borys.

Similarly, it was the duty of appellants to see that their judgment against Fabio and Olive Banegura was entered correctly. In the absence of actual knowledge, there was no duty resting on Mystic Investments when conducting, or having conducted, a title examination of the property at issue to search the records under any other name than Fabio and Olive Banegura, the title owners of the property at issue. Imposing such a duty would require searchers "to be poets, phonetic linguists, or multilingual specialists." *National Packaging Corp.*, 47 Ohio App.3d at 90, 547 N.E.2d at 376. This Court is not prepared to create such an undue burden.

### III. Conclusion

 We hold that the Circuit Court for Baltimore County correctly ruled that Mystic Investments had a priority interest because appellants' judgment lien was misindexed.

Generally, absent evidence of actual knowledge, when a judgment is indexed under an incorrect or misspelled name rather than the "correct name," it fails to operate as constructive notice in respect to subsequent lien holders or purchasers without actual knowledge. Notice will be found for judgments that are indexed under incorrect names only when the facts and circumstances indicate that a party had actual knowledge that the judgment was indexed under an incorrect name, or had actual knowledge that the debtor used or was known under the misnomer. In the case *sub judice*, appellants presented no evidence that Mystic Investments knew that a judgment against Fabio and Olive Banegura would be indexed under any names other than Fabio and Olive Banegura. Accordingly, we affirm the ruling of the Circuit Court for Baltimore County.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**