HORTON, APPELLANT, *v*. MATHENY ET AL., APPELLEES.

(No. 287—Decided March 22, 1943.)

*Messrs. Newcomer & Parker,* for appellant.

*Mr. Charles T. Stahl* and *Mr. Curtis G. Koester,* for appellees.

CARPENTER, J.   This appeal on questions of law and fact brought to this court this action for specific performance of a contract for the sale of a farm located in Williams county.

By the contract, the vendor, plaintiff, appellant herein, agreed to deliver to the purchasers, the defendants, appellees herein, a warranty deed with "all persons having an interest in said lands by way of marriage or otherwise joining therein." Plaintiff also agreed to "deliver to second party a complete abstract of the title to said lands brought down to the date of the delivery of said deed, showing a merchantable title of record in said county."

Warranty deeds and an abstract of title which are in evidence were tendered to and refused by the defendants, who claimed that the abstract and title it exhibited did not meet the requirements of the above-quoted parts of the contract. By their answer and so-called cross-petition, it is alleged that "a merchantable title of record" was not shown in the particulars hereinafter described.

The parties had the right to make this contract containing this provision as to title. *Rife* v. *Lybarger,* 49 Ohio St., 422, 31 N. E., 768, 17 L. R. A., 403. Before the plaintiff can have a decree for specific performance of the contract, he must prove that he has complied with it. 52 A. L. R., 1470. The question is: Did the abstract of title and the title it exhibited meet the requirements of the contract?

In 1837, John Esterly, by patent from the United States, acquired title to the quarter section in which a part of this farm is located. The abstract does not show the administration of his estate, but it is stated in the briefs and the answer, and seems to be undisputed, that John Easterly died in Beloit, Wisconsin, in 1857 and that his estate was administered in that city. He left Angeline D. Easterly his widow, and three sons, George B., eighteen years old, Eugene, sixteen, and Frank John, five.

In 1861, George B. Easterly by quit-claim deed con-

veyed his interest in the west half of the quarter section to Eugene W. Easterly, and in May, 1864, he gave to Angeline D. Easterly Bullock of Beloit a power of attorney to sell and convey any "real estate whatever in the State of Ohio to or in which I am as [sic] may be in any way entitled or interested." In December 1864, for him, she, by warranty deed, conveyed to Charles Rossman the same land. From Rossman, down to the present owner, the chain of title is complete and no complaint is made about it.

Under date of March 31, 1855, a quit-claim deed which was acknowledged March 31, 1864, and recorded August 8, 1864, purporting to convey the west half of this quarter section, was given by George D. Young and Caroline Young, his wife, to John Sullinger. Nowhere in the record does it appear that either of these grantors ever acquired any interest in the land described, nor does it appear that their grantee ever gave a conveyance describing any part of that land.

That John Sullinger's title has not been divested is one of the objections raised in the answer. Neither George D. nor Caroline Young had any title, and hence could give none to Sullinger. So far as this title is concerned they were intruders, apparently through some mistake in the description of the land intended to be conveyed. Their deed does not constitute a cloud on plaintiff's title. 57 A. L. R., 1492.

It is also objected to that the marital status of George B. Easterly was not shown in the deed he made in 1861, and that of Eugene W. Easterly was not shown in his deed dated in 1864. Assuming that each was married when these deeds were executed, the most each wife could have in her husband's interest in the farm was a vested dower, or the use of one-third during her life. The last deed was dated seventy-nine years ago, and it may be safely assumed that death has ended any such dower estate, if any ever existed.

Another objection made by the defendants is that John Esterly's title has never been divested. The question thus raised is whether John Esterly, who took title from the United States in 1837, was the same person as John Easterly whose estate was administered in Beloit, Wisconsin. Looking at this whole record and applying the principle of *idem sonans,* these names are the same. Such principle was applied in the case of *Lessee of Pillsbury* v. *Dugan's Admr.,* 9 Ohio, 117, 34 Am. Dec., 427, to the names Pillsby and Pillsbury, and in the case of *Gleich* v. *Earnest,* 36 Ohio App., 326, 173 N. E., 212, to the names Ernest and Earnest.

The final and serious objection is that the apparent one-third interest of Frank John Easterly, who was five years old on the death of his father in 1857, has never been divested of record.

The plaintiff's only claim is that he and his predecessors in title have been in adverse possession of the land for more than seventy years and, therefore, that he has a merchantable title thereto. If he lived, Frank John Easterly reached majority in 1873, seventy years ago. So far as the record shows, his one-third interest is still outstanding, and the fact that neither he nor any one representing his interest has done anything of record about it, has not, of itself, lost it to him. See 57 A. L. R., 1490.

Title may be acquired by adverse possession, but that does not appear of record. To so establish it requires evidence showing the presence of all of the elements that make a title by adverse possession. Recognizing this, plaintiff has secured two affidavits. One is by the present owner, Andrew Weber, the plaintiff's vendor, who acquired his title and rights in the land from his father who became a successor in title to Charles Rossman in 1869. This affiant, who says he was born in 1868, says that he and his family have been

in possession since his father acquired the Rossman title. The other affiant says he was born in 1874 and has known the Weber family and their farm all of his life and he corroborates the Weber affidavit as to possession of the land.

These affidavits were filed in the office of the county recorder of Williams county and were recorded in a "miscellaneous" record. The law of Ohio does not provide for the recording of such ex parte affidavits, and, without the sanction of law, they can have no effect upon an outstanding title, nor do they operate to establish of record a title by adverse possession, nor are they competent evidence of the facts stated in them in regard to such possession. A judicial proceeding to which the persons to be bound by the judgment have been made parties, in this case Frank John Easterly or his heirs, is the only avenue by which the testimony of such witnesses can establish a record title by adverse possession. An action for specific performance like this, lacking the necessary parties, is not such action. No Ohio decisions have discussed this proposition, but many courts of other jurisdictions have, as indicated in 7 A. L. R., 1174 and 1175.

The requirement of this contract which provides for "a merchantable title of record" goes farther than did the contract in *McCarty* v. *Lingham,* 111 Ohio St., 551, 146 N. E., 64, which involved only a "marketable title." In paragraph four of the syllabus, that term is defined:

"A 'marketable title' imports such ownership as insures to the owner the peaceable enjoyment and control of the land as against all others."

In the opinion it is said:

"It should appear reasonably certain that the title will not be called in question in the future, so as to subject the purchaser to the hazard of litigation with

reference thereto. It must * * * embrace the entire estate or interest sold." Citing *Justice* v. *Button,* 89 Neb., 367, 131 N. W., 736, 38 L. R. A. (N. S.), 1.

In 38 L. R. A. (N. S.), 1, there is an extended note on "What is a marketable title," and in 57 A. L. R., 1253, appears a later note on "Marketable title," which is an elaborate treatise on most of the questions involved herein. At page 1284 it is said that the terms "marketable title" and "merchantable title" are used interchangeably.

A title in which a one-third interest in fee is outstanding of record is not a "merchantable title of record." Note, 52 A. L. R., 1464. The plaintiff, having contracted to furnish an abstract showing such, can not have specific performance until he has complied with it. 7 A. L. R., 1166.

It is urged by plaintiff that an action to quiet title and thereby establish a record of title by adverse possession, which he says has existed for so many years, works an undue hardship upon him. The answer to that is that he should not have made such a contract. A vendor knows or has the means of knowing the state of his title, and he can confine his contract to that title. If he does not do so, he takes the risk of hardships like this.

Petition dismissed at the cost of the plaintiff.

*Petition dismissed.*

LLOYD and STUART, JJ., concur.