NATIONAL PACKAGING CORPORATION, APPELLANT, *v.* BELMONT ET AL., APPELLEES; PROVIDENT BANK ET AL.

(No. C-870351—Decided
March 16, 1988.)

*Frost & Jacobs* and *Mark H. Klusmeier,* for appellant.
*Robert W. Cettel & Assoc.* and *Robert W. Cettel,* for appellees L. Michael and Elaine E. Belmont.
*Michael Buschbacher,* for appellees Richard E. and Vera DeCamp.

DOAN, J. In the instant appeal, we must determine whether to apply the venerable doctrine of *idem sonans* to the facts and circumstances set forth in the record. We choose not to adhere to the doctrine of *idem sonans* in the matter *sub judice,* not as an act of judicial insubordination, but for reasons of policy set forth below.

The record reveals that the plaintiff, National Packaging Corporation ("NPC"), sued Michael Bolan, d.b.a. Trade Packaging, in the Franklin County Court of Common Pleas. On November 25, 1983, NPC obtained a judgment for $3,331.76 plus interest; and, at a later time, it certified the judgment in Hamilton County, with Bolan's name incorrectly spelled "B-O-L-E-N" in the docket book. At the time the judgment was certified, Michael Bolan owned property in Hamilton County at 8107 Camargo Road and 815 Indian Hill Road.

Bolan's ex-wife, Elaine (now Elaine Belmont), brought a foreclosure action against the property located at 815 Indian Hill Road to collect overdue child-support payments. The property was sold in a sheriff's sale to L. Michael and Elaine Belmont (Bolan's ex-wife and her new husband). Because NPC's judgment was filed under an incorrect spelling of Bolan's name, NPC did not receive notice of the sheriff's sale and was unable to protect its interest in the property.

The Belmonts subsequently sold the Indian Hill Road property to Richard E. and Vera DeCamp. It was only after this second conveyance that NPC brought its own foreclosure action, asserting the certified judgment from Franklin County against both the Indian Hill Road property and the Camargo Road property.

The Belmonts moved to dismiss NPC's complaint in a filing that the trial court treated as a motion for summary judgment. The DeCamps then moved for summary judgment against NPC and the Belmonts. NPC responded with its own motion for summary judgment against the Belmonts and the DeCamps. On April 30, 1987, the trial court overruled NPC's motion for summary judgment, entered summary judgment for the DeCamps and the Belmonts against NPC and held that the DeCamps' motion for summary judgment against the Belmonts was moot. The court dismissed all other claims existing among these three parties, adding a Civ. R. 54(B) certification in a *nunc pro tunc* entry dated July 6, 1987, and this appeal followed.

In its single assignment of error, NPC asserts that the trial court erred to its prejudice by overruling its motion for summary judgment. Relying upon the doctrine of *idem sonans*,[1] it argues that the certified judgment filed under a similar sounding but incorrect spelling of the debtor Bolan's name, retaining the same initial letters as the correctly spelled name, should have been held to give rise to a valid lien for the benefit of NPC and to provide the appropriate constructive notice to title searchers.

The doctrine of *idem sonans* was adopted by the Ohio Supreme Court in *Lessee of Pillsbury* v. *Dugan's Administrator* (1839), 9 Ohio 117. There the court held that Mrs. Pillsbury was on sufficient notice that her one-eighth interest in certain real estate was being adjudicated, even though the petition for partition listed her as "Pillsby." Its reasoning was expressed in these terms:

"In adjudicating upon transactions occurring in the early settlement of our state, we must never forget the absence of precedents and system, the different usages introduced by people emigrating from every part of the country, the want of knowledge or neglect of technical learning, and the risk of loss of evidence from the lapse of time. Hence errors of form have always been overlooked, where the acts of a court are manifest, and its jurisdiction established. * * *

"* * *

"It is not every mistake in names which will invalidate an instrument or proceeding. *This effect will follow where the person can not be identified,* or where the error is such as to describe another. But words are intended to be spoken; and where the sound is substantially preserved, bad spelling will not vitiate. * * *" (Emphasis added.) *Id.* at 119-120.

The petition in *Pillsbury* otherwise identified Mrs. Pillsbury by reference to her father, who died seized of the subject real estate, and to her apparent siblings and in-laws. Further, the petition correctly identified the real estate. Thus, she could be identified in spite of her misspelled name.

The Ohio Supreme Court next mentioned the doctrine of *idem sonans* in *Buchanan* v. *Roy's Lessee* (1853), 2 Ohio St. 251, a quiet-title action initiated by Nicholas Longworth. The court, in dicta, mused that the misspelling of Sarah Roy's name as Sarah Ray, in a notice by publication, standing alone might be fatal to the action. Without squarely deciding the question, however, the court went on to note that Sarah Roy could otherwise be identified in the published notice.

---

[1] The doctrine of *idem sonans* is defined in 70 Ohio Jurisprudence 3d (1986) 21-22, Names, Section 18, as follows:

"The arbitrary orthography and pronunciation given to proper names, and the variant spelling resulting from ignorance have led the courts to formulate the doctrine of 'idem sonans,' which means 'sounding the same.' Under this doctrine a mistake in spelling the name of a party is immaterial if both modes of spelling have the same sound. The grounds for applying the doctrine to slight variations in spelling is that of de minimis non curat lex — the principle that the law is not concerned with trifles. The general rule in Ohio seems to be that a change in the spelling of a word which does not alter its meaning, or in the spelling of a name where the idem sonans is preserved, is not a material variance. Thus, it is not every mistake in names which will invalidate an instrument or proceeding. To have this effect, the mistake must be such that a person cannot be identified, or that the error describes another. Since words are intended to be spoken, bad spelling will not vitiate their intended effect where the sound is substantially preserved." (Footnotes omitted.)

Thus the "otherwise identified" standard was carried forward from *Pillsbury* to *Buchanan.*

In 1869, the Ohio Supreme Court again dealt with *idem sonans*, this time in a criminal matter. In *Turpin* v. *State* (1869), 19 Ohio St. 540, a case involving an allegedly forged signature, there was a variance between the spelling of the name as it appeared on the state's exhibit ("R-e-n-n-i-c-k" or "R-u-n-i-c-k"), and the spelling of the name as it appeared in an indictment ("R-e-n-i-c-k"). The court, however, found no fatal flaw in the variance, using this analysis:

"The general rule seems to be, that a change in the spelling of a word which does not alter its meaning, or in the spelling of a name where the *idem sonans* is preserved, is not deemed a material variance. * * *

"If the variance between the name to the order [the state's exhibit] and the name appearing in the indictment had been plain, it would have been the duty of the court to refuse to allow the order to be given in evidence. But where the name to the order was uncertain, and was susceptible of being read and understood as agreeing with the name stated in the indictment, it was not, in our opinion, error for the court to submit the question to the jury. * * *" *Id.* at 545.

While it is not stated as part of the court's rationale, we note that there was other evidence in *Turpin* to identify the person whose name was allegedly forged.

NPC cites *Rauch* v. *Immel* (1936), 55 Ohio App. 71, 23 Ohio Law Abs. 629, 8 O.O. 354, 8 N.E. 2d 569, and *Horton* v. *Matheny* (1943), 72 Ohio App. 187, 27 O.O. 69, 51 N.E. 2d 41, as the basis for validation of its claimed error. We note, however, that in *Rauch* the doctrine was applied to a misnomer in a notice of a lawsuit, and in *Horton* it was applied to a misspelling in a deed description. In these two cases, as in *Pillsbury, Buchanan,* and *Turpin,* the error did not involve misspellings in a name index.

The case of *Gleich* v. *Earnest* (1930), 36 Ohio App. 326, 173 N.E. 212, is NPC's best authority because it is factually analogous to the instant matter. In *Gleich,* the court held that *idem sonans* validated the assertion of a mechanic's lien against the purchaser of the property at a foreclosure sale, even though the foreclosure suit did not name the lienholder. The lienholder had filed its lien against "C. C. Ernest," when in fact the property was held in the name of "Chester C. Earnest." The court's decision upholding the lienholder's position rested upon the testimony of two abstractors who testified that they would have searched the records under both "Ernest" and "Earnest."

In the matter *sub judice,* three experts have given affidavits stating that the doctrine of *idem sonans* should not be applied today as a standard for determining the marketable title of real estate on the basis of irregularities in last names or surnames, and that by custom it is not applied by abstractors in southwestern Ohio.

We hold that the doctrine of *idem sonans* is inapplicable to names that are misspelled in judgment-lien name indexes. We are not a frontier society of pioneers with little education or an absence of precedent and system. Since the Supreme Court issued its opinion in *Pillsbury* in 1839, we have experienced a tremendous growth in the population and the economy, and those developments have spawned countless real estate sales and a volume of litigation resulting in an abundance of indexed judgment liens. In modern society we cannot overlook matters of form by continuing to indulge the outmoded premises of our societal infancy. To impose rigidly the

90

doctrine of *idem sonans* to name indexes now maintained for judgment liens would tax all land abstractors beyond reasonable limits and require them to be poets, phonetic linguists, or multilingual specialists. The additional time necessary to examine name indexes under such a stringent doctrine would make the examinations financially prohibitive.

The appellees, in their brief, demonstrate the difficulty in applying the doctrine of *idem sonans* to the range of spellings implicated in the instant case: Bolan, Bolen, Bolin, Bowlin, Bowlan, Bowlen, Bolun; the addition of double "l," "ein," and "ien" spellings does not even exhaust all conceivable spelling possibilities. The impossibility of the task created by the doctrine of *idem sonans* is further illustrated by the fact that we, as a society and state, are no longer a small homogeneous population primarily of European abstraction. Since our infancy, we have added Asian, African, South American, Oriental and Arabic surnames. The spelling, sound, and pronunciation of our population's surnames create an insurmountable burden for an abstractor to face in appreciating all the possible variations. Under all the circumstances, a strict application of the doctrine today would leave a real estate purchaser with a lingering fear that misspelled lienholders, either negligently or deliberately, might be lurking under the *idem sonans* doctrine in the judgment-debtor indexes.

We further conclude that the misspelling of Bolan as "B-o-l-e-n," does not rise to being "otherwise identifiable." Unlike many states that statutorily require land descriptions with lien filings, Ohio's indexes merely require a name.

Finally, with the exception of *Gleich,* the courts have not strictly applied *idem sonans.* We find instead a conditional application, which includes as a factor whether the individual is otherwise identified, and in only one case has the doctrine been applied to listings in a judgment-lien name index. We cannot, in sum, find any authority mandating strict application of the *idem sonans* doctrine.

The trial court did not err in denying NPC's motion for summary judgment because reasonable minds could only conclude that NPC was not entitled to judgment as a matter of law. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., and HILDE-BRANDT, J., concur.