JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Advanta National Bank ("the bank"), appeals the trial court's ruling that plaintiff, Regina Reed ("Reed"), has a judgment lien with priority over the bank's mortgage on the defendant Hardman's property.
First Complaint
 {¶ 2} In June 1990, Reed filed suit against the Hardmans after their dog bit her son. Reed's first complaint, however, misspelled the Hardman's name as "Hartman." Although Reed shortly amended her complaint to correct the spelling of defendant's name, the docket entries in the case vary the spelling between the two. When Reed obtained a $100,000 judgment against the Hardman's in 1992, she recorded it properly in the judgment lien department as "Hardman." The certificate in the judgment lien docket book records a judgment against Hardman.[1] The trial court's final journal entry, however, lists the defendant's name as Hartman. This confusion over the spelling of defendant's name is the cause of the controversy in the case at bar.
Refiled Lien
 {¶ 3} In 1997, prior to the lien becoming dormant, counsel for Reed filed a motion with the court to "refile" the lien. His application contained the correct spelling, "Hardman." In response to this application, the clerk's office issued a Certificate of Judgment listing the judgment correctly against the Hardmans. This certificate was not docketed or indexed, however. Instead, it was mailed to Reed's counsel. When the clerk then went to docket and index the lien, she discovered that the actual judgment entry was against the "Hartmans." She also checked the original complaint, which listed the defendants' name as "Hartman." She therefore docketed and indexed the lien as being against the Hartmans, but did not send any notice to Reed's attorney to indicate that she had changed the docketing of the lien.
The Mortgage
 {¶ 4} This was the state of the record in July 1998, when the bank issued a $35,000 mortgage against the property to the Hardmans. This mortgage was properly filed with the county recorder. The title examiner for the bank had done a title search on the property and, although she discovered the 1992 lien against the Hardmans, she did not find that it had been renewed, because the updated lien was under another spelling in both the lien docket and its index. The 1997 certificate contained in the record of the underlying case has the wrong spelling of the name, but the microfilm record of the case does contain both the 1992 and the 1997 certificates, albeit with different spellings on the certificates.
Reed's Foreclosure
 {¶ 5} In 2000, Reed initiated a foreclosure against the property and listed the bank and the county treasurer as defendants. This appeal concerns the rights of only the bank and Reed. The magistrate determined that the error causing the confusion was a result of the clerk's action and that Reed's 1997 filing preserved her priority on the lien.
 {¶ 6} The bank appeals, stating six assignments of error,[2] the first of which follows:
"I. THE TRIAL COURT ABUSED IT'S [sic] DISCRETION IN PERMITTING THE TESTIMONY OF LINDA GREEN AS A WITNESS ON BEHALF OF PLAINTIFF."
 {¶ 7} When Reed filed her foreclosure action against the Hardmans, she attached a Preliminary Judicial Report ("Report") to her complaint. Written by Linda Green of Chicago Title, the Report stated that Reed had refiled the lien against the Hardmans' property in 1997 (Vol. 97, Page 054321) reflecting the judgment entered in Case No. 191137.
 {¶ 8} When Reed filed her witness list for the hearing on the lien priority, she did not include Linda Green as a witness. When she indicated at the hearing that she intended to call Green, the bank objected because it had not had the opportunity to depose Green or prepare questions for the hearing. The magistrate overruled this objection and Green testified.
 {¶ 9} The bank argues that it was prejudiced by the court's ruling allowing her to testify. It cites Loc.R. 21.1(B), which states in pertinent part, "[a] party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel." Nothing in Green's testimony, however, addressed anything not contained in her Report, which was attached to the complaint. That report was the functional equivalent of an expert report.
 {¶ 10} The bank also cites Loc.R. 30, which it claims requires the disclosure of all witnesses before trial. Loc.R. 30 actually addresses the assignment of criminal cases. Loc.R. 21.1 II, however, requires the witness list to be submitted no later than seven days before the final pretrial date. The local rule does not have a clause granting the court authority to waive this time requirement.
 {¶ 11} Nonetheless, it is within a trial court's discretion to admit or bar evidence. "This court has ruled that a trial court has broad discretion in deciding whether to exclude the testimony of expert witnesses who are not properly identified prior to trial." Pittock v.Kaiser (May 14, 1998), Cuyahoga App. No. 72628, 1998 Ohio App. LEXIS 2175, at *7-8. As the Pittock court noted, the witness disclosure rule is intended to prevent surprise and to avoid hampering a party who is preparing for trial. Id. at *9. Although in the case at bar the bank argues that it was deprived of "* * * prior disclosure of [the expert's] testimony or the benefit of it's [sic] own expert," the bank made no showing of surprise regarding her testimony. See Pittock at *9. Rather, the bank focuses on the court's interpretation of the expert's testimony.
 {¶ 12} The admission or exclusion of evidence lies in the discretion of the trial court and the appellate court is limited in its review of these decisions:
"Our responsibility as a reviewing court is "merely to review these rulings for an abuse of discretion." Nakoff [v. Fairview General Hosp.
(1996)], 75 Ohio St. 3d at 256. In order to find an abuse of that discretion,
"* * * the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.""
Pittock at *13. Although the bank vociferously protested the admission of Green's testimony, it has failed to demonstrate how that testimony negatively impacted its case.
 {¶ 13} In fact, her testimony was more favorable to the bank than to Reed. Green explained that Chicago Title found the 1997 lien only in their own computer system. She admitted that a standard review of the court's files would not have revealed the lien not in the computer, but only because it was filed under the wrong name. This information supported the bank's argument that it had performed a proper and adequate search for a lien before it entered into a mortgage on the property. Nothing Green testified to was damaging to the bank. Accordingly, the trial court did not err in admitting the testimony of Linda Green despite the absence of her name on Reed's witness list. The first assignment of error is overruled.
 {¶ 14} The second and third assignments of error are interrelated and will be addressed together. They state:
"II. THE TRIAL COURT ERRED AND ABUSED IT'S [sic] DISCRETION IN DENYING ADVANTA'S MOTION IN LIMINE AS TO THE INTRODUCTION OF RECORDS NOT DISCLOSED TO ADVANTA INCLUDING A CERTIFIED COPY OF THE LIEN IN QUESTION.
III. THE ACTIONS OF PLAINTIFF IN SUBMITTING A CERTIFIED COPY OF A LIEN NOT IN THE RECORD CONSTITUTES EXTREME PREJUDICE TO APPELLANT. THE TRIAL COURT ERRED AND ABUSED IT'S DISCRETION IN PERMITTING THIS EVIDENCE TO BE SUBMITTED ON BEHALF OF PLAINTIFF."
 {¶ 15} The bank objects to the trial court's admitting into evidence documents not provided during discovery. These documents,[3] however, are not included in the file before us. It is the responsibility of the party appealing to ensure that the file is complete for the appellate court's review. Their absence from the record precludes review of their admissibility. Moreover, as noted in the previous assignment of error, the admission of evidence is the decision of the trial court:
"It is well established that a trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. * * * The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * Moreover, error predicated on an evidentiary ruling does not warrant reversal of the trial court's judgment unless the court's actions were inconsistent with substantial justice and affected the substantial rights of the parties. Evid.R. 103(A); Civ.R. 61."
Perry v. Univ. Hospitals, Cuyahoga App. No. 83034, 2004-Ohio-4098 ¶ 25, internal citations omitted.
 {¶ 16} In its appellate brief, the only evidence the bank discussed was the admission of the certified copy of the refiled lien which Reed introduced at the hearing. Reed's counsel apparently did not have the original of the 1997 lien certificate. Although the record reflects that during discovery he produced a copy of both the certificate and the letter requesting the renewal of the lien, he did not have a copy with the original certification. A few weeks before trial, he presented his copy of the time-stamped certificate which the court had sent him in 1997 and had it officially certified. It is this newly certified copy to which the bank objects.
 {¶ 17} In the middle of the hearing, Reed's counsel withdrew the certified copy as an exhibit. The bank does not argue in its brief that the magistrate ever relied on this document in her decision. Thus the bank has failed to demonstrate that its interests were prejudiced by the introduction of this document, which was later withdrawn.
 {¶ 18} Because the bank has failed to demonstrate prejudice arising from the temporary admission of this document, the second and third assignments of error are overruled.
 {¶ 19} For his fourth assignment of error, the bank states:
"IV. THE TRIAL COURT ERRED IN NOT GRANTING A DIRECTED VERDICT IN FAVOR OF APPELLANT."
 {¶ 20} The bank argues that the court denied its motion for directed verdict at the close of Reed's evidence because the court was swayed by the newly certified lien certificate. It claims that this document is the only evidence Reed had to support her claim of having the priority lien.
 {¶ 21} A directed verdict granted on the evidence is controlled by Civ.R. 50(A)(4), which states in pertinent part:
"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 22} Construing the evidence as it was at the end of Reed's case without the objected to document, we find that sufficient evidence was before the court to prevent a conclusion in favor of the bank. Even without Linda Green's testimony, the 1997 letter to the court from Reed's counsel requesting a renewal of the lien, along with the testimony of the clerk in the lien office acknowledging she had changed the spelling on the certificate that had been refiled, was enough to prevent the court from concluding that the bank's mortgage had priority over Reed's judgment lien. Accordingly, this assignment of error is without merit.
 {¶ 23} For its fifth assignment of error, the bank states:
"V. THE DECISION OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
 {¶ 24} The bank assigns the manifest weight of the evidence as an assignment of error, but it fails to argue it in its brief. App.R. 12(A)(1)(c)(2) states:
"(2) The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
 {¶ 25} Because the bank failed to argue this assignment of error separately in its brief, this court will not address it.
 {¶ 26} For its sixth assignment of error, the bank states:
"VI. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF'S LIEN HAS PRIORITY OVER ADVANTA'S MORTGAGE UNDER THE DOCTRINE OF IDEN SONANS AND THAT THE LIEN HAD BEEN PROPERLY FILED UNDER OHIO REVISED CODE § 2329.02."
 {¶ 27} The bank argues that the trial court relied on an outdated doctrine in determining the priority of the liens on the property. The priority of liens is discussed in R.C. 2329, which reads in pertinent part:
"Any judgment or decree rendered by any court of general jurisdiction, including district courts of the United States, within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time there is filed in the office of theclerk of the court of common pleas of such county a certificate of suchjudgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment creditors and judgment debtors, the amount of the judgment and costs, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues, the date of rendition of the judgment, and the volume and page of the journal entry thereof.
* * *
Such certificate shall be made by the clerk of the court in which the judgment was rendered, under the seal of said court, upon the order of any person in whose favor such judgment was rendered or upon the order of any person claiming under him, and shall be delivered to the party so ordering the same; and the fee therefor shall be taxed in the costs of the action."
R.C. 2329.02, emphasis added.
 {¶ 28} The bank argues that the magistrate relied on the doctrine of "iden sonans" in deciding that Reed's lien was properly filed and therefore had priority. "Iden sonans" is an old doctrine which states that if a name can be spelled more than one way yet sound identical, a misspelling of that name on a legal document will not invalidate the document. This doctrine was explained in National Packaging Corp. v.Belmont (1988), 47 Ohio App.3d 86:
 {¶ 29} "The doctrine of idem sonans is defined in 70 Ohio Jurisprudence 3d (1986) 21-22, Names, Section 18, as follows:
"The arbitrary orthography and pronunciation given to proper names, and the variant spelling resulting from ignorance have led the courts to formulate the doctrine of `idem sonans,' which means `sounding the same.' Under this doctrine a mistake in spelling the name of a party is immaterial if both modes of spelling have the same sound. The grounds for applying the doctrine to slight variations in spelling is that of de minimis non curat lex — the principle that the law is not concerned with trifles. The general rule in Ohio seems to be that a change in the spelling of a word which does not alter its meaning, or in the spelling of a name where the idem sonans is preserved, is not a material variance. Thus, it is not every mistake in names which will invalidate an instrument or proceeding. To have this effect, the mistake must be such that a person cannot be identified, or that the error describes another. Since words are intended to be spoken, bad spelling will not vitiate their intended effect where the sound is substantially preserved." (Footnotes omitted.)"
Id. footnote 1.
 {¶ 30} The Belmont court went on to hold, however, that "the doctrine of idem sonans is inapplicable to names that are misspelled in judgment-lien name indexes." Id. at 89. The bank relies on this holding when it argues that, because it was unable to find the renewed lien with the misspelled name, its mortgage has priority over Reed's judgment lien.
 {¶ 31} Belmont differs from the case at bar, however. In Belmont it was the party who filed the lien who misspelled the judgment debtor's name. The circumstances here are more similar to those in StandardHardware v. Bolen (1996), 115 Ohio App.3d 579. In Bolen, the judgment creditor had filed the lien with the correct spelling of the judgment debtor's name, but the clerk misspelled the name in the index and docket. The property in question was subsequently sold to an innocent purchaser for value who obtained a mortgage on the property. When the judgment creditor sought to execute its lien, the new owner and the new owner's mortgage company argued that the lien had extinguished when the innocent purchaser for value bought the property without knowledge of the lien. The court ruled otherwise:
"The clerk of courts is required to docket and index judgments after a proper certificate has been filed. R.C. 2329.02. Here, the clerk misindexed Standard's judgment by listing the judgment debtor as Richard Bolan instead of Richard Bolen. However, misindexing, or even failure to index, does not affect the validity of a judgment lien because a lien becomes valid when the certificate is filed. * * * Therefore, the Hocking County Clerk of Court's apparent error does not affect the validity of Standard's lien. * * * Standard's lien is valid against the McBride's property and is superior to the Bank's lien. Unfortunately, the McBrides and the Bank are innocent victims."
Id. at 582, internal citations and footnotes omitted.
 {¶ 32} The bank does not dispute that Reed's counsel refiled the lien with the correct spelling. Rather, the bank summarizes the issue in the case at bar in its appellate brief as "whether or not [the bank's] mortgage should be rendered worthless as against the refiled lien when [the bank] did everything in its power to find the lien and [Reed] did absolutely nothing to assure the proper filing of her lien until trial when she acted, through her counsel, to induce [a court employee] to correct the record so a certified copy could be issued." Appellant's brief at 16.
 {¶ 33} Reed had, however, acted correctly when her counsel refiled the lien. She had the proper name on the application. Through her counsel, moreover, she received a copy of the lien from the court with the proper name on it. The clerk admitted in her testimony that she did not inform counsel she had changed the spelling of the name in the docket and index. Thus the lien did not become dormant,[4] because Reed acted within the statutory time to renew it.
 {¶ 34} In claiming the priority of its lien, the bank alleges the court improperly relied on the no longer viable doctrine of idem sonans when the "court upheld the priority of the refiled lien on the basis that the names Hartman and Hardman are idem sonans, or names that sound alike." Appellant's brief at 17. On the contrary the magistrate actually relied on the fact that the first lien, which carried the correct spelling as well as case number, put the bank on notice of the existence of a lien on the property. This information should have, according to the magistrate, put the bank on notice that it needed to make further inquiry to determine the disposition of the original lien. Further investigation would have revealed the second lien filing, which document was contained in the original court file with the correct spelling of the Hardmans' name crossed out and the wrong spelling superimposed.
 {¶ 35} More significant in determining the priority of the liens, however, is the following rule: if a party properly files a lien under the correctly spelled name, and the clerk's office mistakenly dockets and/or indexes it under the wrong name, the person filing the lien is protected and his lien has priority over subsequent liens. StandardHardware v. Bolen (1996), 115 Ohio App.3d 579. R.C. 2329 states that a lien is valid "from the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of such judgment." Because it is undisputed that Reed's counsel properly filed both the original lien, as well as the renewal of the lien, Reed's lien is valid. A clerk's error does not invalidate an otherwise validly filed lien.Bolen.
 {¶ 36} Accordingly, the trial court did not err in holding that Reed's lien had priority over the bank's. This assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellants her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and Rocco, J., concur.
[1] A review of the process by which a judgment lien is filed will be helpful to understanding this case. The Twelfth Appellate District succinctly outlined the process in Maddox v. Astro Investments (1975),45 Ohio App.2d 203, 205-206:
A certificate of judgment is a standard form containing a summary of the pertinent facts, required by statute, to give notice to the public of the existence of a lien upon real estate in the county arising out of a judgment of the same court or certain other courts or agencies. R.C.2329.02. A brief outline of the procedure involved will be helpful.
The manual steps include the filing, docketing and indexing of the certificate. Filing is the delivery to the clerk, accompanied by a required fee, and its acceptance, indicated by a time stamp which records the date, hour and minute received. At this point, a number may be assigned and a docket volume and page number reserved for this certicate [sic]; however, this is a part of the docketing procedure. Docketing is the recording of the full certificate in a book for that purpose. This may be done by a photographic process, by manual typing, or by the writing or typing of the information contained in the certificate onto similar standard printed blank forms in the docket book. Indexing is the entry of the names of the parties alphabetically in a suitable index in the docket book or in a separate judgment index suitable for more than one docket book, and the insertion, in the index, of the appropriate reference to the docket book and page where each respective certificate is located.
There is a normal time lapse of a few minutes from the time of filing to the completion of the successive details required for docketing and indexing. If several certificates are filed at the same moment, the time lapse increases proportionally. If, because of other business, the work of the clerk is interrupted the delay may be longer.
[2] The bank did not argue each assignment separately. Nonetheless, as much as possible, we will address the assignments separately.
[3] These documents are records from Chicago Title and a certified copy of the refiled lien.
[4] The statute governing the renewal of liens is R.C. 2329.07, which states:
If neither execution on a judgment rendered in a court of record or certified to the clerk of the court of common pleas in the county in which the judgment was rendered is issued, nor a certificate of judgment for obtaining a lien upon lands and tenements is issued and filed, as provided in sections 2329.02 and 2329.04 of the Revised Code, within five years from the date of the judgment or within five years from the date of the issuance of the last execution thereon or the issuance and filing of the last such certificate, whichever is later, then, unless the judgment is in favor of the state, the judgment shall be dormant and shall not operate as a lien upon the estate of the judgment debtor.