[Cite as *In re A.G.*, 2025-Ohio-4371.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.G.,                                        :

                                                   :               No. 114401

[Appeal by Mother, T.C.]                           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 18, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD24903974

---

### *Appearances:*

Jessica A.L. Camargo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

LISA B. FORBES, P.J.:

{¶ 1} T.C. ("Mother") appeals the juvenile court's decision adjudicating her child ("A.G." or "the Child") to be neglected and committing A.G. to the temporary custody of the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the Agency"). For the following reasons, we affirm the juvenile court's decision.

## I. Procedural History

{¶ 2} On April 24, 2024, CCDCFS filed a complaint alleging that A.G. was neglected and requesting that the Child be committed to the temporary custody of CCDCFS. The juvenile court held a hearing that same day and granted the Agency predispositional temporary custody of A.G.

{¶ 3} In a journal entry dated May 17, 2024, the court set a trial date of July 15, 2024. The guardian ad litem ("GAL") for the Child filed a report ("GAL Report" or "Report") on July 9, 2024. On July 10, 2024, Mother filed a motion for leave to file a witness list and an exhibit list instanter.

{¶ 4} On July 15, 2024, the court held an adjudicatory hearing, after which the magistrate issued a decision recommending that the Child be found neglected. The court held a dispositional hearing on July 16, 2024, after which the magistrate issued a decision recommending that A.G. be placed in temporary Agency custody. Mother filed objections to the magistrate's decisions on July 18, 2024.

{¶ 5} Mother filed a motion requesting hearing transcripts on August 23, 2024. Mother requested transcripts from July 16, 2024, and July 17, 2024; however, no hearing occurred on July 17, 2024. The court initially granted Mother's request, but issued a corrected journal entry dated August 23, 2024, noting that Mother had provided an inaccurate hearing date in her motion. The entry granted Mother's request for the July 16, 2024 hearing transcript. Mother later filed another transcript request for the accurate hearing dates, which the court granted on September 19, 2024.

**{¶ 6}** Mother filed her notice of appeal on September 23, 2024.

**{¶ 7}** On November 8, 2024, the juvenile court considered Mother's objections. The court overruled Mother's objections in a November 13, 2024 journal entry for failure to produce hearing transcripts. In the same order, the court adopted the magistrate's decisions, adjudicating A.G. to be neglected and committing the Child to the temporary custody of CCDCFS.

**{¶ 8}** This court later remanded this case to the trial court for lack of a final appealable order. Mother moved for reconsideration, which this court granted, finding that the juvenile court had ruled on Mother's objections and adopted the magistrate's decisions. This court reinstated Mother's appeal. Mother filed an amended notice of appeal, including the trial court's journal entry overruling her objections.

**{¶ 9}** Mother's appeal raises the following assignments of error:

> I. The trial court abused its discretion, went against the manifest weight of evidence, and violated Mother's due process rights when it dismissed or denied mother's objections for no transcript and to supplement, when it was the court that caused the delays and the appellate court already issued orders for an extension of time until December 4, 2024 to file the transcript.

> II. The court abused its discretion, went against the manifest weight of evidence, and violated Mother's due process rights when the court denied Mother's motion for leave to file witness list and exhibit list and to call any witnesses.

> III. The court abused its discretion, went against the manifest weight of evidence, and violated Mother's due process rights, when it failed to apply the correct standard, and permitted hearsay documents without proper authentication to be admitted and used at trial.

IV. The trial court abused its discretion, went against the manifest weight of evidence, and violated Mother's due process rights when it adjudicated A.G. as a neglected child.

V. The trial court abused its discretion, went against the manifest weight of evidence, and violated Mother's due process rights at disposition when it granted temporary custody to CCDCFS, found that Children Services made reasonable efforts, and adopted the case plan.

## II. Law and Analysis

{¶ 10} We initially note that Mother did not file hearing transcripts with the trial court. Mother supplemented the appellate record with transcripts; however, this court cannot consider a transcript that the trial court had no opportunity to review. *In re R.O.*, 2025-Ohio-374, ¶ 23 (8th Dist.), citing Juv.R. 40(D)(3)(b)(iv), and *In re A.L.*, 2013-Ohio-5120, ¶ 12 (8th Dist.), citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995).

### A. Assignment of Error No. I — Trial Court's Overruling of Mother's Objections to the Magistrate's Decisions

{¶ 11} In her first assignment of error, Mother asserts that the court erred by denying her objections to the magistrate's decisions on the basis that Mother failed to timely file hearing transcripts. Mother argues that the juvenile court's own delay prevented her from doing so and that this court granted her additional time to supplement the trial record. We disagree.

{¶ 12} A party who objects to a magistrate's decisions must provide the court with a transcript of the evidence submitted to the magistrate. Juv.R. 40(D)(3)(b)(iii). Absent the court's written extension, the objecting party must file the transcript within 30 days of filing objections. *Id.* "Where an objecting

party fails to file a transcript, the juvenile court is required to 'adopt the factual findings of the magistrate' and . . . is limited to reviewing the magistrate's conclusions of law." *In re Ry.T.*, 2023-Ohio-12, ¶ 22 (8th Dist.), quoting *In re G.J.A.*, 2019-Ohio-1768, ¶ 20 (8th Dist.).

{¶ 13} We review a trial court's adoption of a magistrate's decision under an abuse-of-discretion standard. *Fig v. Lynch*, 2024-Ohio-3196, ¶ 24 (8th Dist.), citing *Van Dress Law Offices Co., L.L.C. v. Dawson*, 2017-Ohio-8062, ¶ 15 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Abdullah v. Johnson*, 2021-Ohio-3304, ¶ 35. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} The trial court did not abuse its discretion in adopting the magistrate's decisions and overruling Mother's objections. Mother failed to timely file hearing transcripts. Mother filed objections on July 18, 2024. The court did not overrule her objections until November 14, 2024. Nearly four months passed in between, during which Mother did not file hearing transcripts with the juvenile court. We recognize that on September 16, 2024, Mother asked the trial court for an extension to supplement her objections until 30 days after receipt of the transcripts. However, Mother did not request that the juvenile court grant her additional time to file the transcripts.

**{¶ 15}** Even if the court itself delayed Mother's filing of a transcript, as she argues, it did not deprive her of the 30-day window to do so that Juv.R. 40(D)(3)(b)(iii) requires. On September 19, 2024, the court granted Mother's request for transcripts of both the adjudicatory and temporary custody hearings. More than 30 days passed between this order and the juvenile court's November 14, 2024 journal entry overruling Mother's objections. Again, we note that Mother did not request the juvenile court grant her an extension of time to file the transcripts.

**{¶ 16}** We also find no merit in Mother's argument that the juvenile court's purported inaction left her "no choice" but to appeal before filing hearing transcripts. Mother filed her notice of appeal on September 23, 2024. By this date, the juvenile court had already granted her request for transcripts.

**{¶ 17}** It is immaterial that this court granted Mother until December 4, 2024, to file a transcript in the court of appeals. That extension allowed Mother time to prepare the appellate record, not to support her objections before the juvenile court. "Where an objecting party fails to provide the trial court with the transcript of the proceedings, an appellate court is precluded from considering the transcript of the magistrate's hearing submitted with the appellate record." *In re R.O.,* 2025-Ohio-374, at ¶ 23 (8th Dist.).

**{¶ 18}** The court did not abuse its discretion by denying Mother's objections and adopting the magistrate's decisions on the basis that she failed to timely file a hearing transcript.

**{¶ 19}** Accordingly, assignment of error No. 1 is overruled.

## B. Assignment of Error No. II — Denial of Motion for Leave to File Witness List and Exhibit List Instanter and to Call Witnesses

**{¶ 20}** Mother asserts that the court abused its discretion when it denied her motion for leave to file a witness list and exhibit list instanter, five days before trial. Mother argues this motion should have been granted for good cause shown; specifically, the deaths of counsel's relatives. Mother also argues her witness and exhibit lists were supplementary and, therefore, allowed to be filed up until two days prior to trial. We disagree.

**{¶ 21}** We note that it is within the trial court's discretion to admit or exclude evidence. *Rodriguez v. Rodriguez*, 2009-Ohio-3456, ¶ 10 (8th Dist.), citing *Reed v. Hardman*, 2005-Ohio-4394, ¶ 13 (8th Dist.) (finding that the trial court did not abuse its discretion by allowing a party's witnesses to testify even where that party did not file a timely witness list).

**{¶ 22}** Mother did not timely file her witness list or exhibit list. Loc.Juv.R. 36 requires parties to submit an exhibit list by the later of 14 days before trial or three days after receiving notice of a trial date. In a May 17, 2024 entry, the court set a trial date of July 15, 2024. Counsel for appellant did not submit a witness list and exhibit list until July 10, 2025 — five days before trial and almost two months after receiving notice of the trial date.

**{¶ 23}** Mother cites Juv.R. 18(B), which states that "[w]hen an act," with certain exceptions, "is required or allowed to be performed at or within a specified time," the court "for cause shown may at any time in its discretion . . . order the

period enlarged. . . ." The rule further states that the court may extend the deadline for an act even after that deadline has passed in cases of "excusable neglect." Juv.R. 18(B). Mother argues that, because of counsel's family situation, excusable neglect justified her late filings.

{¶ 24} The court did not abuse its discretion in denying Mother's request to file a witness list and exhibit list instanter. Even if the deaths in counsel's family could be sufficient to excuse her failure to timely file an exhibit list and witness list, counsel's requested relief was unreasonable. Five days before trial, Mother's attorney provided the court the names of 16 people that she wished to testify. Counsel could not realistically expect opposing counsel to prepare to examine this many witnesses in such a short time. Denying Mother's burdensome and last-minute request was not an abuse of discretion.

{¶ 25} Also meritless is Mother's argument that the lists she submitted on July 10, 2024, were supplementary lists. Loc.Juv.R. 36 states that exhibit and witness lists "may be supplemented" up until two days prior to trial. Mother had not previously filed a witness list. If parties were permitted to file their entire witness and exhibit lists as a "supplement," the requirement that these lists be filed 14 days before trial would have no meaning.

{¶ 26} Accordingly, Mother's assignment of error No. 2 is overruled.

### C. Assignment of Error No. III — Admission of Purportedly Hearsay Documents

{¶ 27} Mother next asserts that the court erred by admitting documents containing hearsay — specifically, A.G.'s school-attendance records — during the

adjudicatory hearing. Mother argues that A.G.'s attendance records were not properly authenticated because CCDCFS introduced them through the testimony of a social worker who had no personal knowledge of the school's record-keeping practices.

{¶ 28} We review evidentiary rulings for an abuse of discretion. *Telecom Acquisition Corp. I v. Lucic Ents.*, 2016-Ohio-1466, ¶ 47 (8th Dist.); *Renfro v. Black*, 52 Ohio St.3d 27, 33 (1990). Again, we note that no transcript of the adjudicatory hearing was filed in the trial court. We cannot consider testimony that the trial court had no opportunity to review. *In re R.O.*, 2025-Ohio-374, at ¶ 23 (8th Dist.), citing Juv.R. 40(D)(3)(b)(iv) and *In re A.L.*, 2013-Ohio-5120, at ¶ 12 (8th Dist.), citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d at 730. We, therefore, are unable to review the circumstances under which evidence was introduced or admitted at the adjudicatory hearing. We cannot find that the trial court abused its discretion by admitting A.G.'s school-attendance records.

{¶ 29} Accordingly, assignment of error No. 3 is overruled.

### D. Assignment of Error No. IV — Adjudication of A.G. as a Neglected Child

{¶ 30} Mother next asserts that the juvenile court's adjudication of A.G. as neglected was against the manifest weight of the evidence. Mother argues that the record contained no evidence of neglect other than A.G.'s absences from school. Per Mother, A.G.'s mental-health issues, rather than Mother's unwillingness or refusal to take A.G. to school, caused the Child's absences. Mother claims that she helped A.G. seek medication and counseling that required the Child to miss classes. Mother

further argues that A.G.'s poor school attendance is not enough to justify an adjudication of neglect because there was no additional evidence that the Child was unsafe or that her basic needs were not otherwise being met.

{¶ 31} "The General Assembly has conferred authority on the juvenile courts to hear complaints alleging that a child is abused, neglected, or dependent." *In re J.S.*, 2022-Ohio-1679, ¶ 12 (8th Dist.), citing R.C. 2141.23(A)(1). A neglected child is defined, in relevant part, as a child who "lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian." R.C. 2151.03(A)(2). Further, R.C. 2151.03(A)(3) provides that a child is neglected if the child's "parents, guardian, or custodian . . . refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals or well being." Whether a child is an abused, neglected, or dependent child must be proven by clear and convincing evidence. Juv.R. 29(E)(4).

{¶ 32} Regarding whether evidence satisfies the clear-and-convincing evidence standard, the Ohio Supreme Court has stated:

> "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re Z.C.*, 2023-Ohio-4703, ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 33} In reviewing a juvenile court decision for manifest weight,

the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*Id.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 34} We are unpersuaded by Mother's claim that the court's adjudication of A.G. as neglected was against the manifest weight of the evidence because CCDCFS's case-in-chief pertained only to school absences. The definition of "neglected child" includes a child whose parents refuse to provide proper or necessary education. R.C. 2151.03(A)(3). Further, this court has affirmed a finding of neglect and disposition of temporary custody where the underlying complaint was based on a child's significant absences from school. *See In re A.S.*, 2018-Ohio-1085, ¶ 2, 25 (8th Dist.).

{¶ 35} Again, we note that we are limited in our ability to consider Mother's fourth assignment of error because no transcript was provided to the trial court. Nevertheless, although it is incomplete, the record supports the trial court's conclusion that A.G was neglected. The GAL Report filed with the trial court prior to the adjudicatory hearing notes that "AG missed a very large [number] of days at school." In his Report, the GAL also states that he reviewed documents related to A.G.'s absences and that they "indicate that the vast majority of the absences are unexcused." The evidence of A.G.'s school absences supports the trial court's finding that A.G. was neglected, and we are precluded from reviewing the transcript for additional information.

{¶ 36} Accordingly, assignment of error No. 4 is overruled.

### E. Assignment of Error No. V — Commitment of A.G. to Temporary Agency Custody

{¶ 37} In her final assignment of error, Mother asserts that the juvenile court erred by committing A.G. to temporary agency custody, finding CCDCFS made reasonable efforts to prevent the removal of the Child, and adopting the case plan in conjunction with its dispositional order. Mother argues that A.G. was in the care of a suitable adult, her grandmother, and that the record indicated neither that A.G.'s safety was at issue nor that Mother was uncooperative with CCDCFS. We disagree.

{¶ 38} "Following an adjudicatory hearing, if the juvenile court finds clear and convincing evidence that the child is abused, neglected, or dependent, the court must hold a separate dispositional hearing before issuing a disposition order." *In re J.S.*, 2022-Ohio-1679, at ¶ 12 (8th Dist.), citing R.C. 2151.35(A)(1) and 2151.53. The juvenile court then "is authorized to order a disposition for the child, which includes (1) placing the child in protective supervision; (2) committing the child to the temporary custody of the agency; (3) awarding legal custody of the child to either parent or another person; or (4) committing the child to the permanent custody of the agency." *In re K.E.*, 2022-Ohio-3333, ¶ 15 (8th Dist.), citing R.C. 2151.353(A). In choosing between these dispositions, the court's "primary concern remains the best interest of the child." *Id.* at ¶ 17, citing *In re Ka.C.*, 2015-Ohio-1148, ¶ 19 (8th Dist.).

{¶ 39} There is no specific test that a juvenile court must consider to determine whether a dispositional order of temporary agency custody is in a child's

best interests. *In re Q.S.*, 2023-Ohio-712, ¶ 119 (8th Dist.), citing *In re G.G.*, 2022-Ohio-1654, ¶ 33 (9th Dist.). A court can consider the best-interest factors set forth in R.C. 2151.414(D)(1), which govern permanent custody cases, if applicable. *Id.*

{¶ 40} "Among the dispositional options, '[a]n award of temporary custody to a public or private children's services agency is substantially different from an award of permanent custody, where parental rights are terminated.'" *In re K.E.* at ¶ 19, quoting *In re Ka.C.* at ¶ 20. "Here, 'the parent only loses temporary custody of a child and retains residual parental rights, privileges, and responsibilities.'" *Id.*, quoting *id.* "'Furthermore, the parents may regain custody . . . . '" *Id.*, quoting *id.* "'For this reason, the juvenile court employs the less restrictive "preponderance of the evidence" standard in temporary custody cases as opposed to the "clear and convincing" standard of evidence employed at the dispositional stage in permanent custody cases.'" *Id.*, quoting *id.,* quoting *In re M.J.M.*, 2010-Ohio-1674, ¶ 9 (8th Dist.). A preponderance of the evidence is "''evidence that is more probable, more persuasive, or of greater probative value.'''" *In re K.E.* at ¶ 22, quoting *In re C.V.M.*, 2012-Ohio-5514, ¶ 7 (8th Dist.), quoting *In re D.P.*, 2005-Ohio-5097, ¶ 1 (10th Dist.).

{¶ 41} The "'court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion.'" *In Re K.E.*, 2022-Ohio-3333, at ¶ 18 (8th Dist.), quoting *In re A.J.*, 2016-Ohio-8196, ¶ 27.

{¶ 42} On the record before us, we do not find that the court abused its discretion in awarding CCDCFS temporary custody of A.G. The record, though incomplete, includes evidence that Mother was hiding A.G.'s brother, E.V, from the

Agency. The GAL Report states that Mother had "claimed that E.V. had gone missing and that she had no details of where [he] was," after he had been placed in Agency custody. Per the GAL, however, E.V. admitted to a North Olmsted Police employee that he had spent time with Mother during the time period that he was reported missing to CCDCFS. A family case plan prepared by a CCDCFS case worker and filed with the juvenile court on May 6, 2024, also states that "Mother has not been honest with the agency and the child's whereabouts." The evidence that Mother was not honest with CCDCFS and concealing the whereabouts of A.G.'s brother suggests the Agency could not address A.G.'s educational needs while she remained in Mother's custody. The limited record supports a finding that temporary agency custody was in A.G.'s best interest.

{¶ 43} Further, because we are unable to review the transcript, we have no information regarding Mother's claims that the Agency failed to make reasonable efforts to avoid removing the child and that A.G. was safe and in the care of a suitable adult.

{¶ 44} Accordingly, assignment of error No. 5 is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)